THE STATE ex rel. JOHNSON, Collector of Revenues, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellant.

**In Banc, March 30, 1906.**

1. **TAXATION: Uniformity.** Taxes must be uniform and equal coextensively with the territory to which the tax applies.

2. **———: ———: Fifteen-Cent Road Tax: Description: Constitutional Amendment: Exception.** The constitutional amendment of 1900, giving to county courts in the several counties of the State not under township organization, and to the township boards in counties under township organization, the discretion to levy and collect a special tax not exceeding fifteen cents on the one hundred dollars valuation, in addition to taxes authorized to be levied for county purposes under section 11 of article 10 of the Constitution, to be used for road and bridge purposes, but for no other purposes whatever, and exempting the cities of St. Louis, St. Joseph, and Kansas City from the

operation of the amendment, violates the rule of uniformity pre-
scribed by section 3 of article 10 of the Constitution which pro-
vides that "taxes shall be uniform upon the same class of sub-
jects within the territorial limits of the authority levying the
tax," in that it authorizes the county court of Jackson county
to levy the tax upon all property in Jackson county except that
within the limits of Kansas City, and the county court of Buch-
anan county to levy the tax upon all property in Buchanan
county except that within the city of St. Joseph, but exempts
the property within those cities from the burden of the tax,
and is to that extent a discrimination in behalf of those cities.
But the amendment is not for that reason in conflict with the
State Constitution, because, being a part of the same Consti-
tution as is section 3 of article 10, it would be held to be an
exception to the general rule prescribed by that section, and
the same power that requires taxes to be uniform created the
exception.

3. ———: ———: ———: ———: ———: Unconstitutional and
Void. But said constitutional amendment is void, since it is in
conflict with the fourteenth amendment to the Constitution
of the United States which provides that "no State shall make
or enforce any law which shall . . . deny to any person with-
in its jurisdiction the equal protection of the laws."    That
amendment imposes a limitation upon the State's power of
taxation, and forbids the State to impose unequal taxes upon
property of the same kind, in the same situation and used for
the same purpose.    And the fifteen-cent special road tax
amendment, in exempting Kansas City and St. Joseph from its
operation, violated the rule of uniformity prescribed by the
fourteenth amendment, for those cities are constituent parts of
Jackson and Buchanan counties respectively.

4. ———: ———: ———: ———: ———: ———: Raised in
Marion County. The exemption obtained as to Kansas City
and St. Joseph affects the validity and constitutionality of the
amendment in every part of the State, and its invalidity can
be raised in a suit brought for the special road tax in any
county, for where a constitutional amendment or law is invalid
and void it is so as to everything affected by it.

5. ———: ———: ———: Local Option Law. Local option laws,
that is, laws passed by the State which may or may not be
taken advantage of and utilized as the people of each locality
may elect, must apply to the whole State, and must confer upon
the people of each locality the privilege of taking advantage of
them or not, as they see fit. But a local option law that author-
izes the people of every portion of the State except specified
parts thereof to avail themselves of it, is not a valid law; and
a law that exempts from its operation a large portion of the
taxable wealth of a county is such a law.

6. ———: ———: ———: Invalid in Part. The court will not adjudge the clause of the constitutional amendment exempting St. Louis, Kansas City and St. Joseph from its operation to be unconstitutional and hold the balance to be valid. To do that the court would make the entire amendment applicable to the entire State, including those cities, which would be for the courts to make a constitutional amendment essentially different from that which the people attempted to make. The amendment is either valid as a whole, or void as a whole, and it is *held* to be invalid as a whole.

Appeal from Macon Circuit Court.—*Hon. Nat. M. Shelton,* Judge.

REVERSED.

*O. M. Spencer, Ben Eli Guthrie* and *H. J. Nelson* for appellants.

(1) The entire constitutional amendment in question is void because the exemption of St. Louis, Kansas City and St. Joseph is an unjust discrimination in favor of those cities against all other cities, towns and villages in the State, and is therefore a violation of the fifth and fourteenth amendments to the Constitution of the United States, which provide that no person shall be deprived of property without due process of law and guaranteeing to all persons the equal protection of the law, etc. State v. Bergsh, 170 Mo. 117; Russell v. Croy, 164 Mo. 97; State ex rel. v. Ashbrook, 154 Mo. 393. (2) And the amendment is in conflict with section 3, article 10, of the Constitution of Missouri, which says that taxes "shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax," because in Jackson and Buchanan counties there are other incorporated cities "within the territorial limits" of said counties respectively, so that the county courts of those counties cannot obey the amendment without violating section 3, article 10, of our Constitution. Russell v. Croy, 164 Mo. 103. (3) The amendment is also in conflict with section 7, article 10, of the

Missouri Constitution, which prohibits the exemption of particular cities from taxation. (4) This amendment, except the part exempting St. Louis, Kansas City and St. Joseph, is the same old amendment the people of Missouri have repeatedly defeated. Judson on Taxation in Mo.; 86-7. That the exemption of St. Louis, Kansas City and St. Joseph was tacked on as a trick to prevent the voters of those cities from again defeating the amendment, is a matter of common knowledge and plain on the face of the amendment, and should render the whole amendment void.

*Sydney J. Roy* and *Ben F. Glahn* for respondent.

(1) An amendment cannot be declared void because its provisions conflict with the provisions of the original Constitution. Russell v. Croy, 164 Mo. 104; In the Matter of Executive Communications, 15 Fla. 739; Buckner v. Street, 1 Dill. (U. S.) 257; People v. Angle, 109 N. Y. 564; 6 Am. and Eng. Ency. Law (2 Ed.), 927. This amendment is to be treated as adopted with reference to existing laws. People v. Potter, 47 N. Y. 375; Cass v. Dillon, 2 Ohio St. 607; 6 Am. and Eng. Ency. Law (2 Ed.), 930; Lamar W. & El. Co. v. Lamar, 128 Mo. 188; Fusz v. Spaunhorst, 67 Mo. 255. (2) The taxation of different classes of property by different modes is not forbidden by the requirements of equality and uniformity. And in regard to the enforcement of the collection of taxes, one rule may be adopted for one class of property, and another rule for another class of property. Railroad v. Pennsylvania, 134 U. S. 232; Pacific Express Co. v. Seibert, 142 U. S. 339; Home Insurance Co. v. New York, 134 U. S. 594; Western Union Tel. Co. v. Indiana, 165 U. S. 304; State ex rel. v. Severance, 55 Mo. 387. Railroad property may be separately classed. Railroad v. Walker, 47 Fed. 686.

MARSHALL, J.—This is an action to recover $1,175.48, and penalties thereon, together with a reasonable attorney's fee, being a part of the taxes levied for the year 1901 on the property of the defendant in Marion county, "for county purposes . . . to be used for road and bridge purposes, but for no other purposes whatever." There was a judgment for the plaintiff for the taxes and interest and penalties and $200 attorney's fee, and the defendant appealed.

The petition alleges the official character of the relator as the collector of the revenue for the county; the incorporation of the defendant as a railroad; the fact that it owns certain property, fully described, in Marion county, and then avers "that there was legally assessed and levied against such property for the year ending June 1, A. D. 1901, for State, county, school and other municipal purposes, the aggregate sum of $10,780.65; that there is now due and unpaid for county purposes, the sum of $1,175.48, which sum was levied to be used for road and bridge purposes, and for no other purpose whatever, which the defendant had failed to pay as required by law."

The answer admits the incorporation of the defendant and the ownership of the property; denies every other allegation in the petition, and then avers that the taxes sought to be recovered were not levied in pursuance to any law; that the levy of the tax is illegal and void because not authorized by the statutes or Constitution of the State, and not made in accordance with, or by virtue of, any law whatever; and then further alleges that prior to the 31st of December, 1901, the defendant paid all taxes which had been legally levied against its property in Marion county, for the year 1901.

The reply is, in effect, a general denial.

The case was submitted to the court without a jury upon an agreed statement of facts, which recites the official character of the relator; that the attorneys for

relator were regularly employed to prosecute this ac-
tion; that the defendant is a corporation and the owner
of the property described in the petition, all of which
is situated in Marion county; that the total taxable
wealth of that county for the year 1901 was more than
six million dollars and less than ten million dollars,
and that the county was entitled to levy upon the prop-
erty of the defendant, for the year 1901, a maximum
rate of 40 cents on the one hundred dollars valuation
for county purposes, out of which it was entitled to a
portion for road purposes, not less than five nor more
than twenty cents on the one hundred dollars valuation
of the property of the defendant situated outside of the
cities, towns, and villages; that on the 16th of May, 1901,
the county court of Marion county made, by order of
record, a levy of taxes for State and county purposes
as follows:

"State tax, 15 cents on the one hundred dollars val-
uation; State interest tax, 10 cents on the one hundred
dollars valuation; county tax, 30 cents on the one hun-
dred dollars valuation; county road tax, 10 cents on the
one hundred dollars valuation; special road and bridge
tax, 15 cents on the one hundred dollars valuation;
courthouse tax, 10 cents on the one hundred dollars val-
uation," etc.

The valuation of the property of the defendant in
that county was then set out in the agreed statement of
facts, but as no question is made in reference thereto,
it is not necessary to further refer to it. The total as-
sessed valuation of the property of the defendant in
Marion county was then agreed to be $783,608.37. It
was further agreed that upon that valuation, a county
revenue tax of 30 cents was levied and extended on the
railroad tax books for that year, amounting to $235.83;
a road tax at the rate of 10 cents on the value of the
property outside the cities, which was agreed to be
$671,708.89, amounting, therefore, to $671.71; a special
road tax at the rate of 15 cents on the value of all prop-

erty in the county, including property inside of the cities, of the total value aforesaid, aggregating $1,175.48. It was further agreed that before December 31, 1901, the defendant paid all of said taxes, except the special road tax. It was further agreed that the city of Palmyra and the city of Hannibal are both within the county of Marion, that said county is not organized under township organization, and that defendant paid the taxes levied by said cities on the part of its property located therein for the year 1901. It was further agreed that in attempting to levy and collect said special taxes, the county court of that county "proceeded on the theory that said levy was authorized by the constitutional amendment adopted at the general election held in November, 1900, designated as the 'second constitutional amendment,' found on page 381, of the Laws of Missouri of 1899, and reading as follows: 'Section 1. In addition to taxes authorized to be levied for county purposes, under and by virtue of section 11, article 10, of the Constitution of this State, the county courts in the several counties of this State not under township organization, and the township board of directors in the several counties under township organization, may in their discretion, levy and collect a special tax not exceeding fifteen cents on each one hundred dollars valuation, to be used for road and bridge purposes, but for no other purpose whatever; and the power hereby given said county courts, and township boards, is declared to be a discretionary power. This constitutional amendment shall not apply to the cities of St. Louis, Kansas City and St. Joseph.' "

It was further agreed that on the 26th of March, 1901, there went into effect an act of the Legislature of the State of Missouri, entitled, "An Act to amend chapter 151, Revised Statutes of Missouri of 1899, by adding thereto a new article, to be known as article 12," etc., which act is found on pages 237 to 244 of the Laws of Missouri of 1901; and that during the year 1901, the

county court never made any order adopting said new article 12, and did not proceed thereunder, but in making the levy of ten cents out of the rates allowed for county purposes, for the item designated as "road tax," the county court acted under article 1 of chapter 151, Revised Statutes 1899, and in attempting to make a levy of 15 cents for the item designated "special road tax," proceeded on the theory that the above-mentioned constitutional amendment was self-enforcing, without any act of the Legislature to enforce it, and that the provisions of article 8, chapter 149, Revised Statutes 1899, were complied with as to the assessment and levy of the taxes for the year 1901, except that the defendant shall not be deemed to have admitted that either article 8 or the above-mentioned constitutional amendment, separately or collectively, constituted any authority whatever for the levy of said special road tax of $1,175.48 involved in this suit.

The defendant then asked the court to declare the law to be that under the pleadings and the agreed statement of facts, the judgment must be for the defendant. The court refused to so declare, and entered a judgment for the plaintiff for $1,175.48 taxes, $199.88 interest and penalty, $200 attorney's fee and costs. After proper steps the defendant appealed.

The defendant assigns six alleged errors, to-wit:

First. That the constitutional amendment is void, because the exemption of St. Louis, Kansas City and St. Joseph creates an unjust discrimination in favor of those cities, against all other cities, towns and villages in the State, and therefore violates the fifth and fourteenth amendments to the Constitution of the United States.

Second. That the levy of the special tax for the year 1901 was void, because the taxes for 1901 were assessed as of June 1, 1900, and the constitutional amendment was not adopted until November, 1900; and that amendment was not retroactive.

Third. That the act of the county court in levying 10 cents for county and road taxes, and 15 cents for special road taxes, made a total levy of 55 cents for county purposes, and that under section 11 of article 10 of the Constitution, the county was only authorized to levy a total tax of 40 cents on the one hundred dollars valuation for county purposes, and hence the levy of the 15 cents for special road tax is void, unless authorized by the constitutional amendment.

Fourth. That the constitutional amendment was not self-enforcing, and that the Act of March 26, 1901, was not followed by the county court in making this levy, but that the levy was made upon the theory that the constitutional amendment needed no legislative aid to enforce it.

Fifth. That when the constitutional amendment was proposed and adopted, the law (section 9436, Revised Statutes 1899), authorized the levy of a road tax of not more than 20 cents, and that the amendment to the Constitution only attempted to authorize the General Assembly to legislate for the levy of a special road tax "in addition to taxes authorized to be levied," in case the county court desired more money for road purposes than could be secured by the levy of 20 cents authorized by section 9436, to be taken out of the rate allowed for county purposes, and that Marion county levied only one-half of the 20 cents authorized by section 9436, and levied a special road tax of the full 15 cents referred to in the constitutional amendment, and hence the levy of 15 cents special road tax is invalid.

Sixth. That the judgment for the penalties and for an attorney's fee is invalid, because not authorized by the constitutional amendment in question, even if it was valid and self-enforcing; and further because section 9378, Revised Statutes 1899, which allows a reasonable attorney's fee is void because it is contrary to the fifth amendment to the Federal Constitution, and because that section of the statutes imposes a greater

burden on railroads than is imposed upon other persons by section 9302, Revised Statutes 1899, and is therefore in conflict with the fourteenth amendment to the Constitution of the United States, which guarantees to all persons equal protection under the law.

## I.

The first error assigned is that the constitutional amendment of 1900, giving the county courts in the several counties of the State not under township organization, and the township board of directors in counties under township organization, the discretion to levy and collect a special tax, not exceeding fifteen cents on the one hundred dollars valuation, in addition to taxes authorized to be levied for county purposes, under section 11 of article 10 of the Constitution, to be used for road and bridge purposes, and for no other purpose whatever, and declaring that the power thus given is a discretionary power, and exempting the cities of St. Louis, Kansas City and St. Joseph from the operation of the amendment, is void, because the exemption of the cities of St. Louis, Kansas City and St. Joseph creates an unjust discrimination in favor of those cities against all other cities, towns and villages in the State, and makes the 15-cent special road tax void under the fifth and fourteenth amendments to the Constitution of the United States, because it violates the uniformity and equality of taxation in this State.

And subsidiary to the general proposition, defendant claims that section 3 of article 10 of the Constitution of Missouri provides that, "taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax;" and upon this basis the defendant claims that the special road tax is not uniform throughout the whole State, and therefore it is void; and further that because in the cities of St. Louis, Kansas City and St. Joseph the cost of improving the streets and roadways may be assessed as special

benefits against the abutting property, there is no reasonable substantial basis for exempting those cities from the operation of the amendment, for the reason that in the various counties of the State there are cities and towns where like provisions for the improvements of streets obtain, and that the practical operation of the constitutional amendment, therefore, is to exempt St. Louis, Kansas City and St. Joseph from the special road tax, and to make the other cities of the State pay for local improvements by means of special taxes, and also to pay the special road tax; thereby making the property in the other cities of the State liable to a double tax for the improvement of the streets of the cities and roads of the counties.

The general rule of law is that taxes must be uniform and equal, co-extensive with the territory to which the tax applies. [Gilman v. Sheboygan, 2 Black (67 U. S.) 510; Township, etc., v. Talcott, 19 Wall. (86 U. S.) l. c. 675; Day v. Roberts, 101 Va. 248; 27 Am. and Eng. Ency. Law (2 Ed.), 590, et seq.; Idem, pp. 594-5-6-7, and cas. cit.; 1 Cooley on Tax., chap. 6, p. 254, et seq.; Kansas City v. Whipple, 136 Mo. l. c. 479; St. Louis v. Spiegel, 75 Mo. 145.]

This general rule is thus well expressed in 27 Am. and Eng. Ency. Law (2 Ed.), 595:

"Such restrictions, however, do not mean that there is one fixed and unvarying rule of taxation for all purposes throughout the State. Thus, a tax for State purposes must rest uniformly upon all parts of the State; if for county purposes, upon all parts of the county; if for township or city purposes, upon the entire township or city; if for a special or local purpose, then the tax must be laid with due regard to the proportionate interests of the taxpayers in the locality benefited or affected. In each locality the rate may vary, but for public local purposes all property not exempt under the Constitution must be taxed." And this is the idea embodied in the third section of article

10 of the Constitution, wherein it is said: "Taxes shall be uniform upon the same class of subjects *within the territorial limits of the authority levying the tax.*"

Gilman v. Sheboygan, supra, was decided by Justice Swayne in 1862, before the adoption of the fourteenth amendment. It was there said, after a review of the constitutional provisions of Wisconsin, requiring taxes to be uniform, and the interpretation of those provisions by the Supreme Court of that State, that the Supreme Court of the United States would follow the interpretation of the State courts, and that the meaning of the Constitution of Wisconsin in this regard was, "that all kinds of property not absolutely exempt, must be taxed alike, by the same standard of valuation, equally with other taxable property, and co-extensive with the territory to which it applies."

The case of Township, etc., v. Talcott, supra, was decided by the same learned jurist after the adoption of the fourteenth amendment, and he again reiterated the same rule, saying, "All kinds of property must be taxed uniformly or be entirely exempt. The uniformity must be co-extensive with the territory to which the tax applies. If a State tax, it must be uniform all over the State. If a county or city tax, it must be uniform throughout such county or city. But the rule does not require that taxes for the same purposes shall be imposed in different territorial subdivisions at the same time. If so a county could not levy a tax to build a courthouse, jail or infirmary without rendering it necessary for every other county in the State to do the same thing, without reference to the different circumstances of each."

In Day v. Roberts, 101 Va. 248, the validity of a section of the charter of the town of Smithfield, which exempted all persons and property in that town from the payment of any poor rates, road, school or other tax of the county of Isle of Wight, and from contributing

to county expenses, was presented for adjudication.
The Supreme Court held that provision of the city
charter unconstitutional, on the ground that the city
was a part of the county, and that county taxes applied
as well to city property as to country property, saying,
"If a tax is imposed by the State it must be uniform
throughout the whole State; if by a county, city, town,
or other subordinate district, the tax must be uniform
throughout the territory to which it is applicable."

The same principle was applied by this court in
St. Louis v. Spiegel, 75 Mo. 145, in reference to a license
tax which discriminated between persons located in dif-
ferent parts of the city.

Cooley on Taxation (3 Ed.), volume 1, page 257,
quotes the language of Chief Justice BIGELOW, in Com-
monwealth v. Savings Bank, 5 Allen 428, 436, where it
is said:

"Perfect equality in the assessment of taxes is un-
attainable. Approximation to it is all that can be had.
Under any sytem of taxation, however wisely and care-
fully framed, a disproportionate share of the public
burden will be thrown on certain kinds of property,
because they are visible and tangible, while others are
of a nature to elude vigilance. It is only where statutes
are passed which impose taxes on false and unjust prin-
ciples, or operate to produce gross inequality, so that
they cannot be deemed in any just sense proportional
in their effect on those who are to bear the public
charges, that courts can interpose and arrest the course
of legislation by declaring such enactments void."

The same author quotes, at page 258, the language
of SHARSWOOD, J., in Grim v. School District, 57 Pa.
St. 433, that "perfectly equal taxation will remain an
unattainable good as long as laws and government and
man are imperfect." And the same author quotes the
language employed by the Supreme Court of the United
States in Head Money Cases, 112 U. S. 580, wherein it
is said: "Perfect uniformity and perfect equality of

taxation in all the respects in which the human mind can view it, is a baseless dream."

Defendant shows that in Jackson county there are other cities outside of Kansas City, to-wit, Independence, Lee's Summit, Blue Springs, Oak Grove, Buckner and Greenwood, and in Buchanan county, there are in addition to the city of St. Joseph, the villages of Easton, Rushville, DeKalb, and Agency, in all of which there are local provisions made for assessing special benefits for the improvement of streets, more or less resembling the provisions of the charters of the cities of St. Louis, Kansas City and St. Joseph. The defendant argues that the constitutional amendment discriminates in favor of those three large cities and against the smaller cities and towns, exempting the former from the operation of the tax and subjecting the latter thereto. If this was the only objection to the constitutional amendment the matter would be of easy solution, for no consideration of special taxes, or more properly speaking special benefits, for the improvements of streets in a city, can make the provisions as to one city illegal because they are not the same as the provisions in reference to another city. The term "special taxes" as applied to the charging of the cost of the improvement of city streets against abutting property, is not technically correct. Such charges are special benefits and not taxes in any sense of the word. If they were taxes they could not, generally, be enforced, because the amount would make the total tax exceed the limitation prescribed by the Constitution.

If the constitutional amendment only excepted the city of St. Louis, a very different question would also have been presented for adjudication, for the city of St. Louis is a political subdivision of the State as much as any county in the State, and is treated as a county, and any law that is passed applicable thereto applies to all persons within its territorial limits; and taxes

which are imposed upon property in the city of St. Louis are necessarily uniform because they subject the same class of subjects, within the territorial limits of the city, to the tax. In fact the laws relating to taxation in St. Louis have for many years been different from the laws applicable to other parts of the State.

But the condition as to Kansas City and St. Joseph is very different. The constitutional amendment attempts to exempt property in those cities from the operation of the amendment, and to leave all other property in the counties in which those cities are located, subject thereto. The tax imposed by the amendment, therefore, does not operate uniformly upon the same class of subjects within the territorial limits of the authority levying the tax, for Kansas City is a constituent part of Jackson county, as St. Joseph is of Buchanan county. Both Jackson and Buchanan counties have county organizations and county courts and both of those counties are authorized to levy county taxes, which must be paid by the people of the cities of Kansas City and St. Joseph, respectively, as well as by all the other people within the territorial limits of those counties.

The amendment in question attempted to leave all of the property in all the counties and cities of the State subject to the special road tax, at the discretion of the county courts or township board of directors, except in the cities of Kansas City, St. Joseph and St. Louis. St. Louis has no county court, and no county tax of any kind is assessed in that city. But the practical working of the amendment is to discriminate in favor of Kansas City and St. Joseph against the people of Jackson and Buchanan counties, and to make all of the property in all of the other counties of the State, and in all of the other cities of the State, liable for those special road taxes, and to exempt the people in Jackson county, who live in Kansas City, and in Buch-

anan county, who live in St. Joseph, from the operation
of the law.

As above pointed out, the Supreme Court of Virginia, in the case of Day v. Roberts, supra, expressly
held that such a discrimination made the law void under
the Constitution of that State, and the Supreme Court
of the United States, in Gilman v. Sheboygan, and
Township, etc., v. Talcott, supra, announced the same
principles, and such is also the meaning of section 3
of article 10 of the Constitution of Missouri.

These considerations, however, would not be decisive of the case were it not for the fourteenth amendment to the Constitution of the United States. For
when the constitutional amendment of 1900, under discussion, was adopted, it became just as much a part of
the organic law of this State as section 3 of article 10
of the Constitution, and the effect of the amendment
was the same as if it had been originally incorporated
in the Constitution. The two would, therefore, have to
be construed together, and the effect of it would be
that all taxes would be required to be uniform upon
the same class of subjects within the territorial limits
of the authority levying the tax, except that in the
cities of St. Louis, Kansas City and St. Joseph, the
special road tax should not be applicable. If such had
been the provisions of the Constitution, this court could
not have declared the exception void, for the same
power that required taxes to be uniform made the exceptions stated.

But the fourteenth amendment to the Constitution
of the United States provides that "no State shall
make or enforce any law which shall . . . deny to
any person within its jurisdiction the equal protection
of the laws." Speaking to this amendment the Am.
and Eng. Ency. Law (2 Ed.), volume 27, page 590, says:

"The fourteenth amendment to the Constitution of
the United States, which provides that no State shall
make or enforce any law which shall abridge the priv-

ileges or immunities of citizens of the United States, or deny to any person within its jurisdiction the equal protection of the law, imposes a limitation on the exercise of all the powers of the State, including among them that of taxation. This prohibition against the denial by any State to citizens within its jurisdiction of the equal protection of the laws forbids, in a sense, the imposition of unequal taxes. The rule is that unequal taxes may not be imposed on property of the same kind, in the same situation and used for the same purpose.''

The same author, at page 591, says: ''The provision of the Constitution of the United States that no State shall pass any law impairing the obligation of contracts constitutes a limitation on the taxing power of the States.''

The same author, at page 584, says: ''The theory of government in the United States is that socially and politically all are equal, and that the burden of supporting the government should be borne equally by all the individuals composing it, in proportion to the benefits conferred. This principle of justice and equality which requires each person to contribute toward the public expense his proportionate share according to the advantage which he receives lies at the foundation of our political system, and is usually expressed in the constitutions of the states by various provisions limiting the taxing power. Such provisions, however, are not grants of power, but are restrictions or limitations of an existing power.''

The same author, at page 583, says: ''The power of taxation is one of the essential attributes of sovereignty and is inherent in and necessary to the existence of every government. Except so far as restrained by the provisions of the Federal Constitution, the power of the State as to the mode, form and extent of taxation is unlimited where the subject to which it applies is within the jurisdiction of the State.''

The scheme of the constitutional amendment un-questionably was to create local option as to the levy-ing of special taxes for road and bridge purposes. It expressly declared that the county courts in the several counties not under township organization, and the town-ship boards in the several counties under township organization "may, in their discretion, levy and collect a special tax not exceeding fifteen cents on the one hundred dollars valuation, to be used for road and bridge purposes, but for no other purpose whatever; and the power hereby given said county courts and township boards is declared to be a discretionary power." Local option laws have been held to be constitutional in this State. [Owen v. Baer, 154 Mo. 496 to 539, and cas. cit.] But local option laws, that is, laws passed by the State which may or may not be taken advantage of and utilized as the people of each locality elect so to do, or not, must apply to the whole State, and must confer upon the people of each locality a privilege of taking advantage, or not, of those laws as they see fit. A local option law that authorizes the people of only a limited portion of the State, or of every portion of the State except specified parts thereof, to avail themselves of it, is not a valid law, for laws must be made by the Legislature and must be co-extensive with the territorial limits of the State, in respect to the powers conferred or the burdens im-posed. A law which attempted to authorize certain counties of the State to have one kind of county govern-ment, and prohibited other counties in the State from having the same kind of government, would not be an uniform or equal law, and would violate not only the Constitution of this State, but the fourteenth amend-ment to the Constitution of the United States, but laws which authorize all of the counties of this State to have one or the other of two different kinds of local government, as the people may elect, e. g., county or-ganization or township organization, are general laws

and are constitutional, because they confer equal privileges upon all the people of the State.  So the amendment under consideration would have been a perfectly valid law if it had not been for the last sentence thereof, which exempted the cities of St. Louis, Kansas City and St. Joseph from its operation; and might have been a valid law even excepting the city of St. Louis, because such law could not apply to that city, for the reason that it is an entire, separate, political subdivision of the State, and has no county court or township board and no county taxes; but, as above pointed out, such is not the fact as to Kansas City and St. Joseph, for they are constituent parts of Jackson and Buchanan counties respectively.  By so excepting those cities from the operation of the amendment the effect of the amendment was to discriminate in favor of those cities and against all other portions of the State; to impose an additional county tax of 15 cents on the one hundred dollars valuation for road and bridge purposes  in all the other parts of the State, at the discretion of the county courts or the township boards, but to exempt from the operation of the law a large proportion of the taxable wealth of those counties.

It will not do to say that the fact that such exception obtains as to Kansas City and St. Joseph does not affect the validity and constitutionality of the law in other parts of the State where no such condition exists, and where all of the property of a county, whether lying inside or outside of a city in the county, will be subject to the special road tax, and that the local option feature of the law might result in the imposition of a tax in one county and a failure to impose a similar tax in another county, as the county officers deem best, for the question is not as to the practical operation and working of the law, but is as to the question of whether the law, as a law, is a valid and constitutional law.  If there had been no exception as to St. Louis, Kansas City and St. Joseph, the practical working of the law

would have been that the tax would have been imposed wherever the county authorities deemed it necessary, but that where the county authorities did not deem it necessary, or those localities reflecting the sentiments of the people of that locality, did not desire to take advantage of the benefits of the law, and therefore did not impose the tax, such tax would have been collected in one part of the State and not in another, but the law would have been a general valid law notwithstanding the difference in the manner in which it was taken advantage of by the various localities of the State. The people of the State, in adopting this amendment, may have understood that, at one time, the people of one locality would need its aid, while the people of another locality would not need its aid. And also that whilst the people might not need its aid at one time, they might need its aid thereafter; and therefore the amendment was made liable to be taken advantage of or not, as the necessities of the several localities required it.

The Supreme Court of the United States, in Township, etc., v. Talcott, supra, well expressed this idea when it said: ''But the law does not require that taxes for the same purpose shall be imposed in the different territorial subdivisions at the same time. If so a county court could not levy a tax to build a courthouse, jail or infirmary without rendering it necessary for every other county in the State to do the same thing, without reference to the different circumstances of each one.'' And this same idea is expressed in section 11 of article 10 of the Constitution, which limits the rate of taxation for county, city, town and school purposes, to be increased to certain other amounts when the majority of the voters, that are taxpayers, voting at an election to decide that question, vote for the increase. And further permits an increase for the purpose of erecting public buildings in counties, cities or school districts, when two-thirds of the qualified voters of the city, county or school district shall vote therefor; there-

by accentuating the exigency which may confront one locality, and make an increase of taxes necessary, when such exigencies do not exist in another county, and therefore such increase is not necessary there.

The amendment under consideration does not, however, measure up to the standard fixed by these rules and principles, for as to Jackson and Buchanan counties, the county courts of those counties cannot levy a county tax, whether for ordinary purposes or under this amendment, unless they apply uniformly upon the same class of subjects, within the territorial limits of those counties, and under this amendment, the special road tax would not apply to Kansas City and St. Joseph.

It follows from the foregoing that the amendment under consideration is not a valid constitutional provision of law, but that it violates the fourteenth amendment to the Constitution of the United States, in that it denies to all persons, within the State, the equal portection of the laws, which that amendment forbids any State to do. In reference to acts of the Legislature, the general rule of law obtains that if the several parts of the act are severable and some are constitutional, and others unconstitutional, the unconstitutional portions will be adjudged invalid, and the constitutional portions adjudged valid. But this general rule is subject to this qualification, to-wit, that the rule will not apply where it appears that the Legislature would not have passed one part without the other part, which the courts adjudged unconstitutional, had also been a part of the law. In other words, that the law was one general scheme. The question then is, can this court declare the last sentence of the amendment under consideration unconstitutional, and the remaining parts of the amendment constitutional?

The purpose of the exception in favor of the three cites named is apparent, not only from the face of the

amendment itself, but from the recent history in this
State in reference to the matter treated in the amend-
ment. The question of good roads is one of first import-
ance to the people of every State.  It is no longer a
matter for debate that good roads enhance the value of
all rural property as much as good streets enhance the
value of urban property.  In the attempt to procure
good roads, the practical difficulty has been encount-
ered, that the value of the abutting land is not suffi-
cient, ordinarily, to justify the imposition of a special
tax for the improvement of the roads; while in cities
the value of all abutting property will stand such an
assessment.  The people of the country have, therefore,
been put to it to find some method whereby they could
procure good roads without incurring expenses which
amount to as much as the value of the abutting prop-
erty.  The needs of the average county are such that
sufficient taxes cannot be levied under the general taxing
power of the counties to raise enough money, by
general taxation, to pay the running expenses of the
county and also to improve the roads. Various attempts
have, therefore, been made to procure the passage of
some amendment to the Constitution which would en-
able the counties to raise the necessary money to pay
for the construction of good roads.   Such attempts
have met with repeated failures, usually due to the fact
that the people of the large cities, especially, voted
against the same, because they had to pay the special
benefits for the improvement of the streets in the cities,
and they were unwilling to also pay an additional tax
for the improvement of the roads in the country.  The
framers of the amendment under consideration, there-
fore, sought to overcome the reasons which have here-
tofore prevented  the passage of somewhat similar
schemes, by excepting the cities of St. Louis, Kansas
City and St. Joseph from the operation of the amend-
ment, and thus make it a matter of indifference to those
cities as to whether or not the tax was imposed on other

localities; or it may be, by inducing the vote of those cities to be cast in favor of the amendment and thereby carry the same, when the people of the cities would not be subjected to any burdens in consequence thereof, and when the votes of the people of the county might have been sufficient to defeat the amendment if the votes of the people of those cities, who had no interest in the matter, had not been cast in favor of the amendment.

It cannot, therefore, be said that the amendment would have been passed even if the exception had not been attached to it, and hence it cannot be said that the exception is unconstitutional and that the body of the amendment is a valid law. The whole amendment must stand or fall together. It has been demonstrated herein that it cannot stand together. Hence, it must all fall. Moreover, the court cannot declare the exception in reference to the three cities unconstitutional, and declare the remainder of the amendment constitutional, because by so doing the court would make the whole amendment applicable to all parts of the State, including the three cities named, and would thereby make an amendment to the Constitution essentially different from that which the people themselves made or attempted to make. Such is not the province of a court.

These considerations make it unnecessary to consider the other questions raised by the defendant.

For these reasons the judgment of the circuit court is reversed.

*Brace, C. J.,* and *Gantt, Burgess, Valliant, Fox* and *Lamm, JJ.,* concur.