# THE STATE ex rel. BLADES, Collector, v. WABASH RAILROAD COMPANY, Appellant.

### Division Two, June 17, 1913.

1. **TAXATION: Rates for County Purposes: Valuation in Excess of Six Millions: Last Assessment.** The provision of section 11 of article 10 of the Constitution which prescribes the maximum limit of taxation for county purposes and which says that "the rate herein allowed to each county shall be ascertained by the amount of taxable property therein, according to the last assessment for state and county purposes," by "the last assessment" meant the last completed assessment as corrected and approved by the State Board of Equalization, and not the assessment by the local assessor, whose assessment has not yet received the approval of that board. The county court, in determining whether the assessed value of all property in the county exceeds or is less than six million dollars, cannot base its tax levies upon returns made by the officers of railroad companies which, at the time the levy is made, have not been passed upon by the State Board of Equalization.

2. **————: ————: ————: ————: Levy in Excess of Forty Cents.** The county court in May ascertained from the returns made by the railroads and from the general assessment books, which had then been corrected in accordance with the action of the State Board of Equalization except as to railroads, that the aggregate assessed value of all property in the county was less than six million dollars, and levied a tax of fifty cents on the hundred dollars for county purposes. Thereafter the State Board raised the valuation of railroad property in the county to such an amount that the increase, when added to the valuation of all other property in the county, made the aggregate more than six million dollars; and, thereupon, in September the county court, in obedience to Sec. 11582, R. S. 1909, which requires the same rate of taxes to be levied against railroad property that is levied against other property, proceeded to levy a tax of fifty cents on the hundred dollars valuation of defendant railroad's properties for county pur-

poses, notwithstanding the Constitution says that the levy for county purposes in counties having between six million and ten million dollars worth of property, as ascertained by the "last assessment for State and county purposes," shall not exceed forty cents on the hundred dollars valuation. *Held,* that the county court should have disregarded the statute, and obeyed the Constitution, and that it had no power to levy more than forty cents on the railroad properties of the county, "the last assessment," as completed by the State Board, showing that the aggregate assessed valuation of all properties in the county, at the time the levy was made in September, was in excess of six million dollars.

3. **CONSTITUTION: Statute: Conflict.** Wherever there is an irreconcilable conflict between the Constitution and the statute, the statute must yield. No levy of taxes can be held to be valid which is in excess of the maximum limit authorized by the Constitution, though the levy may accord with the statutes.

4. ———: **Taxation: Time of Levy: Before Action of State Board of Equalization.** The spirit of the statute, and possibly its letter, requires county courts to make their tax levies at the annual May term, at which time, under the present statutes, they cannot know what valuation will be placed upon the railroad properties in their counties by the State Board of Equalization; and since the maximum levy for county purposes is fifty cents on the hundred dollars of assessed valuation in counties in which at the last assessment the aggregate valuation was less than six million dollars, and cannot exceed forty cents in counties where the aggregate valuation is between six and ten millions as ascertained by the last assessment, which means the valuation as completed by the State Board of Equalization, county courts, in some counties, cannot safely make their levies until the State Board has completed its work and certified the result to the county clerks. But if this rule works an inconvenience and a loss of revenue to the county, the remedy is in the hands of the General Assembly, and not in the hands of the courts, whose paramount duty it is to uphold and support the Constitution.

5. **TAXATION: Special Road District Tax: County or City Tax: Determined by Petition.** Where the plaintiff sued for taxes alleged to be due a special road district of the county, it will not be heard to contend that the taxes were not levied for a special road district of the county, but for a special road district of a certain city in the county. Plaintiff cannot sue for one party and recover for another. The validity of the tax will be determined upon the basis made by the pleadings, namely, that it was a valid county tax, and not on the theory that it was a valid city tax.

Appeal from Montgomery Circuit Court.—*Hon. James D. Barnett*, Judge.

REVERSED AND REMANDED (*with directions*).

*J. L. Minnis, N. S. Brown* and *Smith & Johnson* for appellant.

(1) The alleged levy of the $38.94 for the use and benefit of the special road district of Montgomery county was made without authority of law. State ex rel. v. Railroad, 195 Mo. 228. (2) The taxable value of railroad, telegraph and telephone properties in Montgomery county could only be fixed by the State Board of Equalization. Secs. 9338, 9339, 9340, 9359, 9363, R. S. 1899; State ex rel. v. Railroad, 82 Mo. 683. (3) The action of the county court at its May session, purporting to ascertain the value of all taxable property in the county, was premature and void. Sec. 9280, R. S. 1899; Secs. 9127, 9129 and 9135, R. S. 1899. (4) The taxable value of all property subject to taxation in Montgomery county in the year 1908 was $6,447,482.-56, and for that reason the county court could not levy a rate in excess of forty cents on the hundred dollars. Sec. 9282, R. S. 1899; sec. 11, art. 10, Constitution of Missouri.

*John V. Nebel* for respondent; *E. P. Rosenberger*, of counsel.

(1) The $38.94 sued for, for the use and benefit of the special road district of Montgomery City, is not claimed under the alleged constitutional amendment of 1900 set forth in appellant's argument, and the case of State ex rel. v. Railroad, 195 Mo. 228, is not in point and has nothing to do with the case at bar. A case submitted in the appellate court must be submitted upon the same theory upon which it is tried in the lower court. (2) The respondent in this case takes a two-

fold position: Position number one being that, when
the Constitution and section 11422 use this language,
"The rates herein allowed to each county shall be as-
certained by the taxable property therein according
to the last assessment for State and county purposes,"
the words "last assessment" have reference to the as-
sessment for the year of 1907, an assessment which
was complete and final when the rate was levied at the
May term as required by statute. It is mandatory up-
on the county court at its May term to fix the rate for
county purposes. It is also mandatory upon the county
clerk that on or before August first, the tax books on
real and personal property in the county be delivered
to the county collector, and it would be impossible for
a county court, in fixing its rate for county purposes,
to wait until the final returns had been made on July
31 by the State Auditor showing what increase or de-
crease the State Board of Equalization had made on
railroad, telegraph and telephone properties. So con-
struing these various sections in the light of reason
and common sense, the Constitution and section 11422
when they use the words "the last assessment" for
State and county purposes have reference to the as-
sessment for the year previous, and, of course, it is
admitted in this case, that the assessed valuation for
Montgomery county for the year 1907, after including
all railroad, telegraph and telephone valuation, was
less than six million dollars. (3) If, however, we are
incorrect in the construction that we have placed upon
the meaning of the Constitution and the statute when
the term "last assessment for county and State pur-
poses" is used, then we most respectfully suggest, in
view of the mandatory provisions of Sec. 11423, R. S.
1909, requiring the county court to fix the rate of levy
for county purposes at its May term, that, at the time
the levy was made in May, the county court had a
right to presume, and fairly so, that the State Board
of Equalization would not raise the valuation of rail-

road, telegraph and telephone companies three-fourths of a million dollars. It had a right to presume that the officers of these various corporations had not made a fraudulent return as to the valuation of their property, and that the valuation as returned, and which had been accepted by the county court at its March term, 1908, would be finally accepted by the State Board of Equalization. With the facts and figures that the county court had before it, at its May term, 1908, it was fully warranted and justified in making the levy for county purposes at fifty cents on the hundred dollar valuation as it did. Having thus rightfully made a levy of fifty cents on the hundred dollar valuation for county revenue purposes on an assessment of less than six million dollars at its May term, 1908, when court met in September, 1908, and after the collector's books had been turned over to him, and when for the first time the report of the State Auditor showing the increase of valuation on railroad, telegraph and telephone property was placed before the county court, it was then too late to make a levy of forty cents on the hundred dollar valuation, because by that time a part of the county and State taxes had already been collected; the collector's books had passed beyond the control of the county court, and certainly, the argument could not be advanced that the county court would have a right at its May term, when the valuation of the county was less than six million dollars, to levy a rate of fifty cents on the hundred dollars valuation on farm and town property and other personal property, and then when the report of the State Auditor came in at the September term showing that by adding to the assessed valuation of the county the increased valuation of railroad, telegraph and telephone companies the total valuation exceeded six million dollars, levy a tax of only forty cents on the hundred dollar valuation on railroad, telegraph and telephone companies. Certainly no railroad corporation can claim that under

those circumstances it can only be compelled to pay forty cents on the hundred dollar valuation, while the general public is compelled to pay fifty cents on the hundred dollar valuation.

BROWN, P. J.—Action to collect railroad taxes. From a judgment for plaintiff in the circuit court of Montgomery county, defendant appeals.

In the year 1908 the county court of Montgomery county levied taxes for county purposes to the amount of fifty cents on the one hundred ·dollars valuation on the right of way and other taxable property of defendant in that county.

Defendant contends that under section 11, article 10, of the Constitution of Missouri the county court was only authorized to levy against defendant's property forty cents on the one hundred dollars valuation for county purposes, because the total assessed valuation of all taxable property in Montgomery county for the year 1908 exceeded six million dollars, and, that, therefore, twenty per cent of the taxes so levied for county purposes (the difference between forty and fifty cents on the one hundred dollars valuation) are illegal.

Defendant paid eighty per cent of the taxes levied against its property for county purposes in the year 1908, but refused to pay the remainder, whereupon this suit and the judgment appealed from followed.

This litigation grows out of the following admitted facts.   When the county court of Montgomery county held its regular May term in 1908, the general assessment books of the county were complete and had been corrected in conformity with the action of both the county and State boards of equalization, but the State Board of Equalization had not at that time assessed, equalized and fixed the final valuation of such railroad property in the county, as it had the power to assess under section 9344, Revised Statutes 1899 (now Sec. 11559, R. S. 1909).

Said county court at its May term, 1908, ascertained from the assessment books and returns of railroad property made to its clerk under section 9340, Revised Statutes 1899 (now Sec. 11555, R. S. 1909) that the aggregate assessed valuation of all the taxable property in the county for 1908 was less than six million dollars, and levied a tax of fifty cents on the one hundred dollars valuation for county purposes on all the property in the county except the railroad rights of way, tracks, and such other railroad property as it is the special province of the State Board of Equalization to assess under sections 9339 and 9344, Revised Statutes 1899, now Secs. 11554 and 11559, Revised Statutes 1909.

The assessments and returns of the railroad company which were before the county court at its May term indicate that all the taxable property in the county was worth less than six million dollars; but on July 31, 1908, the State Board of Equalization, having raised the valuation of railroad property assessable in that county to the extent of $780,156.50, certified the result of its labors to the county court.

After adding said increase in the valuation of railroad property as fixed by the State Board of Equalization to the then existing assessment of other property, the aggregate valuation of all property in Montgomery county for 1908 exceeded six million dollars.

The county court met again in the month of September, 1908, and, notwithstanding the return or certificate of the State Auditor on railroad assessments, made under section 11578, Revised Statutes 1909, then showed the total assessed value of all property in that county to be in excess of six million dollars, it proceeded to levy upon defendant's property a tax of fifty cents on the one hundred dollars valuation for county purposes (the same as it had theretofore at its May term levied upon other property in the county).

The county court no doubt acted in good faith in levying upon the railroad property the same rate of taxes for county purposes which it had theretofore levied upon other property in the county. In fact, by section 9363, Revised Statutes 1899 (now section 11582, Revised Statutes 1909) it was required to levy the same rate of taxes upon railroads as other property. It is, therefore, apparent that this litigation grows out of the fact that the law does not require the assessment of railroad property to be completed at the same time as the assessment of other property; and if the county court violated the Constitution by levying upon defendant's property a tax for county purposes in excess of forty cents on the one hundred dollars valuation, it did so in an effort to obey section 11582, supra.

*County Tax Levy.*

Plaintiff's learned counsel assert that it was the duty of the county court to fix the rate of tax levies for county purposes at its May term, 1908; and while he does not call our attention to any mandatory statute prescribing that such taxes *must* be levied by county courts at their May terms, we think it was probably the legislative intent that the rate of tax levies should be fixed in May. [See Sec. 9283, R. S. 1899, now Sec. 11423, R. S. 1909.]

Plaintiff's counsel also assert that as the statute required tax levies to be made in May the county court possessed the right to rely upon the assessments of 1908 as they existed in said month of May, and was not required to await the action of the State Board of Equalization to ascertain what the final assessed valuation of property in the county might be.

This contention seeks a construction of that part of section 11, article 10, of our Constitution which prescribes the method for ascertaining the assessed valuation of counties, and reads as follows:

"The rate herein allowed to each county shall be ascertained by the amount of taxable property there-

in, according to the last assessment for State and county purposes.''

We are not aware that this particular clause of our Constitution has ever been before the appellate courts of this State. We are, therefore, justified in consulting the precedents announced by the appellate courts of other jurisdictions.

The Supreme Court of Illinois (Culbertson v. City of Fulton, 127 Ill. 30), in construing a constitution which used the word ''last assessment,'' held that said words meant the last completed assessment as corrected and approved by the State Board of Equalization, and not the assessment by the local assessor, whose work had not yet received the approval of said State Board of Equalization.

In the case of Wilkinson v. Van Orman, 70 Iowa, 230, a constitutional provision prohibiting school districts from becoming indebted in excess of five per cent of the taxable property therein ''to be ascertained by the last State and county tax lists'' was construed to apply only to the completed tax lists, and not to the original assessment lists as prepared by the assessor before the taxes were equalized and levied.

In the case of Chicago, Burlington & Quincy Railroad Co. v. Village of Wilber, 63 Neb. 624, the Supreme Court of Nebraska construed the words ''last preceding assessment'' to mean an assessment which had been completed by receiving the approval of all the agencies through which it was required to pass.

We find the reasoning of the foregoing cases is sound, and that the county court of Montgomery county could not base its tax levies upon returns made by the officers of railroad companies, which returns had not been passed upon by the State Board of Equalization.

It is not contended by respondent that the tax levies in controversy were based upon the assessment of property in that county made during the year 1907 (which were doubtless completed), but they are ad-

mittedly based upon assessment books and returns of railroad officials made in 1908. There was no attempt in this case to show what the assessment of the county amounted to as made in 1907.

It is, however, admitted that in the month of September, 1908, when most of the taxes sued for were levied upon defendant's roadbed, etc., the county court had before it the result of the work of the State Board of Equalization, which showed conclusively that the aggregate and final assessment of all property in the county exceeded six million dollars for the year 1908.

At its September meeting the county court found itself in a very unfortunate position. It was required by section 11582, Revised Statutes 1909, to levy upon the railroad property of defendant as assessed by the State Board of Equalization the same rate of taxes for county purposes that it had theretofore levied upon other property of the county, which in this case was fifty cents on the one hundred dollars valuation, and at the same time it was prohibited by the Constitution from levying upon said property more than forty cents on the one hundred dollars valuation for county purposes.

In this dilemma said county court elected to obey said section 11582, supra, and let the Constitution shift for itself.

In thus ignoring the Constitution the county court committed an error fatal to plaintiff's cause of action in this case. Whenever there is an irreconcilable conflict between the Constitution and the statutes, the latter must yield.

In the case of Kansas City, Fort Scott & Memphis Railroad Co. v. Thornton, 152 Mo. l. c. 575, this rule was stated by MARSHALL, J., in the following language:

"It is the duty of the courts to enforce the organic law and to brush aside any statute which conflicts with it, whether it was passed before or after the Constitution was adopted."

It is doubtless the purpose of our revenue laws to have tax levies based upon the assessment books made and returned during the years when such taxes were levied. County courts must necessarily take into consideration the current assessments in order to ascertain how large or how small the levies should be. The rate for county levies is not arbitrarily fixed by the law. They may equal the amount limited by the Constitution, or they may be lower if the county court believes that a lower rate of levy will supply the county with all the funds it needs.

We see no escape from the defendant's contention that in levying the taxes of 1908 the county court acted upon the assessment of that year, and having disregarded the plain mandate of the Constitution the county taxes levied on defendant's property in excess of forty cents on the one hundred dollars valuation are illegal.

We are not unmindful of the hardships which this rule will entail in this case, and possibly in others. The spirit, possibly the letter, of the law, requires county courts to make their tax levies at the annual May terms thereof, at which time they cannot know what the action of the State Board of Equalization will be in assessing railroad property. Consequently, it is impossible for them to determine with certainty what the aggregate assessed valuation of the county will be in the month of May.

Section 11, article 10, of our Constitution divides counties into four classes for purposes of taxation; such classes to be ascertained by their total assessed valuation. In two of those classes county courts are permitted to levy fifty cents on the one hundred dollars valuation for county purposes; in one class forty cents on the one hundred dollars valuation, and in the remaining class thirty-five cents on the one hundred dollars valuation.

It follows that when the assessed valuation of a county is such that it is likely to pass from one class to another through the final action of the State Board of Equalization in raising or lowering values, county courts cannot safely make their levies until the State Board of Equalization has completed its work and certified the result thereof to the county clerks.

If this rule works an inconvenience or loss in specific cases, the evil must be borne until the General Assembly in its wisdom shall see fit to enact laws requiring all assessments to be made at the same time, and that taxes be levied only after all assessments are completed and finally corrected and approved by the State Board of Equalization.

Much as we dislike to announce a rule which may cause loss or inconvenience to the citizens of the State, and possibly nullify some of our statutes relating to the assessment and collection of public revenues, it is our paramount duty to uphold and support the Constitution; and we cannot warp or twist its words or place a strained construction upon its provision, however great may be the demand that we do so. [State ex rel. Burns v. Gibson, 195 Mo. 251.] It follows that we must deny recovery to plaintiff for the county taxes sued for in this case.

Among the taxes sued for in this action is $34.98 alleged in plaintiff's petition, and recited in the agreed statement of facts and judgment, to be due to the special road district of Montgomery *county,* Missouri, for the year 1908. It is conceded by respondent that if these taxes were levied for the special road district of Montgomery county they would be invalid under the decision of this court in State ex rel. v. Chicago, Burlington & Quincy Railroad Co., 195 Mo. 228. Respondent, however, contends that these road taxes are not due to the special road district of Montgomery *county,* but are

Special Road Tax.

due to the special road district of Montgomery *City*, and were levied under a valid law.

It is only necessary to say that we must determine the validity of plaintiff's claim by its pleadings. To permit to sue for taxes alleged to be due to the special road district of Montgomery *county*, and recover for the use and benefit of the special road district of Montgomery *City*, would amount to permitting a suit for one party and a recovery for another. A recovery cannot be had in favor of one who is not a party to the cause of action. [Sec. 1729, R. S. 1909.]

From the conclusions we have reached it follows that the judgment appealed from must be reversed and the cause remanded with directions to enter judgment for defendant. It is so ordered.

*Walker* and *Faris, JJ.*, concur.