THE STATE EX REL. and to use of ADLAI J. JAMISON, Collector of Revenue for Shannon County, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, Appellant.—300 S. W. 274.

Court en Banc, December 2, 1927.

*E. T. Miller, Ward & Reeves* and *W. J. Orr* for appellant.

BLAIR, J.—Action by the Collector of Revenue of Shannon County to collect taxes claimed to be due said county from appellant, together with interest, penalty and attorney's fees. The venue was changed to Carter County. There the trial court entered judgment for plaintiff and defendant was granted an appeal to this court. The disposition of the appeal involves a construction of the revenue laws of this State; hence our appellate jurisdiction.

Respondent contends that Shannon County was entitled in 1923 to levy for county purposes a rate of fifty cents on each one hundred dollars of assessed valuation. Appellant contends that said county could not levy at a rate in excess of forty cents. It seems that the amount sued for represents the difference between the amount of taxes for county purposes paid by appellant on the forty-cent basis and the amount claimed by respondent to be due on the fifty-cent basis.

The case was submitted below on the following stipulated facts:

"1st. That the State Board of Equalization certified the valuation on real and personal property on March the 29, 1923, and on railroad and telegraph on October 15, 1923.

"2nd. State valuation real and personal property is $4,996,369.00
 Valuation of railroad property for year 1923 821,847.58
 Merchants valuation for year 1923 187,867.00

         $6,006,083.58

"3rd. The County Board of Equalization finally adjourned April 23, 1923.

"4th. The County Court made the tax levy at the May term, 1923.

"5th. After October 15, 1923, the County Court made certain corrections on the tax books of certain individual taxpayers' assessments amounting to $17,120, which reduced the total valuation of the county below $6,000,000. The following are corrections of errors; made by the Assessor.

"List No. 456 Citizens State Bank, error in subtraction $1,000.00
 1592 M. M. Moore, error in addition 923.00
 2518 J. W. Willis, error in addition 4,800.00
 644 Winona Telephone Company, double assessment 800.00

         $7,523.00

"6th. The Merchants' Tax Book is received in the month of September, 1923.

"7th. The total valuation as shown by the 1922 Merchants' Book was $158,244.00."

Article X, Section 11, of our Constitution, limits the rate which counties may levy for taxes for county purposes to fifty cents on the one hundred-dollar valuation, where the assessed valuation of all property in the county is $6,000,000 or less. Where such assessed valuation exceeds $6,000,000 and is under $10,000,000, the maximum rate is forty cents for each one hundred dollars of valuation. Hence, if the total assessed valuation of Shannon County, by which the lawful rate was ascertainable, did not exceed $6,000,000, the rate of fifty cents was legally assessed and the judgment should be affirmed. If such valuation exceeded $6,000,000, the maximum rate was forty cents and the judgment below should be reversed.

Article X, Section 11, of the Constitution, also provides that "the rate herein allowed to each county shall be ascertained by the amount of taxable property therein, according to the last assessment for state and county purposes."

The first question to be determined is what is meant by the "last assessment," as those words are used in Article X, Section 11, of the Constitution. If they mean the completed assessment for 1923 and if the County Court of Shannon County had no power to reduce the assessment below $6,000,000 by making certain "corrections," as ap-

pellant contends, then the levy made by the county court was excessive and invalid.

The case of State ex rel. Blades v. Wabash Railroad Co., 251 Mo. 134, 158 S. W. 26, cited and relied on by appellant, if soundly ruled, is authority strongly supporting appellant's contention that the last assessment, by which the legality of the levy must be ascertained, is the completed assessment for 1923, even though such assessment was not completed until after October 15, 1923.

There is nothing in Article X, Section 11, of the Constitution which requires the assessment, made in the year the levy is made and in the year in which the taxes are payable, to be taken as and for the "last assessment." The term "last assessment" means the last completed assessment. The Wabash case so holds. [See also State ex rel. Carthage v. Hackmann, 287 Mo. 1. c. 188, 229 S. W. 1078; Steinbrenner v. St. Joseph, 285 Mo. 1. c. 325, 226 S. W. 890; State ex rel. Dexter v. Gordon, 251 Mo. 1. c. 309, 158 S. W. 683.] It must therefore be regarded as finally settled in this State that the words "last assessment," as used in Article X, Section 11, and in Article X, Section 12, of the Constitution, means the last completed assessment.

The term "last assessment" is merely an arbitrary measuring rod which is not necessarily accurate at the time it is applied. In fixing the limit of indebtedness under Article X, Section 12, the "assessment next before the last assessment" is used as the measuring rod, notwithstanding the actual assessed value in the taxing district may have markedly increased or decreased between the date of such "assessment next before the last assessment" and the time when the particular bonds are voted.

Although the statute does not specifically provide that the county court shall make the levy of taxes for county purposes at any particular time, such time is quite limited perforce of other provisions. Section 12863, Revised Statutes 1919, requires the county court to determine the sum necessary to be raised for county purposes and to fix the rate necessary to raise that amount as soon as may be after the assessor's books shall be corrected and adjusted according to law. This must be at or before the May term of each year because, at that term, the county court is authorized and empowered to appropriate, apportion and subdivide all of the revenues collected and to be collected, etc. [Sec. 12866, R. S. 1919.] The legislative intent that the levy should be made at or before the May term is thus quite manifest. [State ex rel. v. Wabash Railroad Co., supra, 1. c. 141.]

Thus the county court is at least authorized and empowered to make the levy for county purposes at its May term and, in fixing the rate of such levy, the court is governed by the last assessment, which means the last assessment completed at the time such levy is made. It can mean nothing else. If the assessment for the current year is

290

completed at the time the levy is made, well and good. That assessment can be used as the measuring rod to ascertain the rate which can legally be levied. If the assessment for the current year is not complete at that time, then the completed assessment for the previous year must be used.

As a matter of fact, the valuation of merchants' stocks for the current year can never be definitely known at the May term of the county court, for the simple reason that merchants are not required to make their returns until the first Monday in June and such valuations cannot be equalized until the first Monday in September. [Sec. 13071, R. S. 1919.] When the valuation fixed by the State Board of Equalization for railroad and telegraph property is not certified until after the May term of the county court, such valuation cannot be used at that time as any part of the "last assessment." As appears by the stipulation, the State Board of Equalization did not certify the valuation of the railroad and telegraph property for 1923 until October 15th. Neither the railroad and telegraph valuation nor the merchants valuation for the year 1923 was before the County Court of Shannon County at its May term, when it came time to and it did fix the tax rate for 1923. There was no statute nor constitutional provision which required the county court to wait until the State Board of Equalization certified the railroad and telegraph valuation, before the county court could fix the rate for that year. If such were the requirement, it might result that the taxpayer would be unable, albeit willing all the while, to pay his taxes until they had become delinquent, if the State Board of Equalization delayed long enough in certifying down such valuation.

Again, if the assessment for the year for which the levy is made measures its validity in all cases, a levy apparently valid when made in May could well become invalid in October, by reason of the subsequent action of the State Board of Equalization. The county court, in counties where the assessed valuation is close to the limit for a change in rate, would never know how to plan to meet the necessary expenditures of the county because it would never know, until months after it was authorized to and did fix its levy, whether the levy fixed was valid or how much revenue it would produce. The validity of the levy cannot properly be dependent upon subsequent events.

A construction should never be given to a statute or a constitutional provision which would work such confusion and mischief unless no other reasonable construction is possible. A construction, that the words "last assessment," as used in Article X, Section 11, mean the completed assessment for the year in which the levy is made, means uncertainty and confusion in the very important matter of levying taxes. The construction we think should be given to

those words furnishes a plain, certain, workable and always available basis for fixing the levy. At its May term the county court knows what rate it can assess. It can then make a fairly accurate estimate of the probable assessed valuation for the year and can regulate the expenditures of the county accordingly. At least there is less uncertainty than exists where the county court does not know whether it can levy forty cents or fifty cents on the hundred dollars valuation.

In the opinion in the Wabash case, it was suggested that there was no contention that the levy was based upon the assessment of 1907 (the previous year) and that there was no evidence as to what the assessment was in 1907. It was stated that it was conceded that the levy there challenged was based upon the completed assessment for 1908 and that such assessment was admittedly in excess of $6,-000,000. The opinion in that case at least assumed that the 1908 completed assessment was correctly used as the "last assessment" for measuring the validity of the 1908 rate of levy. At page 144, it was said: "It is doubtless the purpose of our revenue laws to have tax levies based upon the assessment books made and returned during the years when such taxes were levied."

Such doubtless should be the purpose, but the accomplishment of that purpose is well-nigh impossible in view of the different times in the year when the assessed valuation on different subjects of taxation are finally determined under our patch-work revenue laws. It is impossible to determine accurately in May what revenue will be produced by application of the rate then fixed to the assessment finally and definitely fixed in the fall. Uncertainty as to the rate which may be levied only adds another element of difficulty. The Constitution says the rate shall be based upon the "last assessment." That can only mean the last assessment which is completed at the time the levy is made. The Wabash case improperly held that the levy must, in all cases, be based upon the assessment made for the year for which such taxes are levied. In that respect that case must be and is overruled.

The last assessment for state and county purposes, that is, the completed assessment for 1922, does not appear in the stipulation, further than the final valuation of merchants' stocks, which was nearly $30,000 less than the 1923 valuation on the same item. But it is not necessary that the proof of the total of the 1922 assessment appear in the record in order that the judgment of the trial court should be entitled to affirmance.

The tax bill made a prima-facie case for respondent. It then became the duty of appellant to prove that the tax bill was incorrect, because the assessment of 1922, upon which the levy made in 1923 should have been based, exceeded $6,000,000. [Sec. 12945, R. S. 1919; State ex rel. Hammer v. Vogelsang, 183 Mo. 17, 81 S. W. 1087;

State ex rel. Lehner v. Fullerton, 143 Mo. l. c. 686, 44 S. W. 741.] The presumption that the officers, charged with the duty of levying taxes, did their official duty here also comes into play and materially aids in supporting the correctness of the judgment below. In the absence of proof of the total amount of the last assessment, it must be presumed that the county judges did their official duty and made the fifty-cent levy only upon ascertainment that the "last assessment" did not exceed $6,000,000.

The stipulation does not disclose the amount of the 1922 completed assessment for such county purposes. Nor does the record disclose that appellant introduced any evidence tending to show that such assessment exceeded $6,000,000. We therefore assume, for the purposes of this case, that such assessment did not exceed $6,000,000 and that the fifty-cent levy was not in excess of the levy the county court was authorized to make at its May term, 1923.

The court below arrived at the correct conclusion, regardless of the theory upon which the case was there tried. In view of the opinion in the Wabash case, which the trial court would naturally and very properly follow, the trial theory doubtless was that the 1923 completed assessment was the measuring rod to determine the validity of the levy and that the assessment for that year did not exceed $6,000,000 because of certain "corrections" made by the county court, after the State Board of Equalization certified the valuation of railroad and telegraph property on October 15, 1923.

In the view we take of the meaning of the words "last assessment" and aided by the presumption mentioned and by the prima-facie proof made by the tax bill, the judgment below was clearly for the right party and it is not necessary for us to determine whether or not the county court could preserve the validity of the 1923 levy by reducing the assessment for that year through the medium of so-called corrections. The judgment is affirmed. All concur.