EFFIE NICHOLS et al. v. LOUIS ROBINSON, Appellant.

Division One, March 28, 1919.

1. **LAWS: When Effective: Under Constitution of 1865.** Under the Constitution of 1865 an act passed in March of the year 1875 and reciting that "this act shall take effect and be in force from and after its passage" took effect upon its approval by the Governor; and the recital was not unconstitutional because the act was signed on the day it was presented to him.

2. ——: ——: **In Ninety Days: Different Date Mentioned in Act.** A section in the General Statutes of 1865 declaring that "all acts of the General Assembly shall take effect at the end of ninety days after the passage thereof unless a different time is therein appointed" did not nullify a section of the Homestead Act of 1875 declaring that "this act shall take effect and be in force from and after its passage." The section appointed a different time in which the act was to take effect, namely, upon its approval by the Governor, who had authority to sign it on the same day it was presented to him.

3. **HOMESTEAD: Widow's Fee After Passage of Act of 1875.** The Homestead Act of 1875 became effective on its approval by the Governor on March 18th, 1875, and consequently a widow, whose husband died on May 5th, 1875, did not take a fee in the homestead, but only such interest as was given her by the Act of 1875, which reduced the widow's pre-existing fee to a life estate.

4. **WILL: Probate: Necessary Showing.** A showing that proof of the subscribing witnesses was taken by the clerk, that the will on that date was admitted to record, that letters testamentary were later granted to the persons named as executors, that it was later "ordered by the court that the bond taken and the letters testamentary granted by the clerk of this court in vacation be and the same are hereby approved," and that the estate was fully administered and the executors discharged as shown by the records, are sufficient proof that the will was duly probated under the laws in force, in 1875, and that consequently testator's son, to whose wife and the heirs of her body the will gave the lands in suit, did not take by descent.

Appeal from Cape Girardeau Circuit Court.—*Hon. Frank Kelly*, Judge.

Affirmed.

*Wilson Cramer* for appellant.

(1)   Lots 10, 11 and 14, comprising 108 acres, valued at the time at $5 per acre, constituted the homestead of Martin Asher. At his death on May 5, 1875, it passed in fee to his widow, Sarah Asher, and was not subject to devise. (2) The Act of March, 1875, by which the widow's interest in the homestead was reduced to a life estate, did not go into effect until June 16, 1875, or ninety days after its passage, although it contains the following provision: "Sec. 3. This act shall take effect and be in force from and after its passage." This section is unconstitutional and contrary to the General Statute relating to the taking effect of acts of the General Assembly.   Constitution 1865, art. 5, sec. 9; G. S. 1865, p. 76, sec. 4; Ex parte Lucas, 160 Mo. 218; Charless & Blow v. Lamberson, 1 Iowa, 435. Under the Constitution the General Assembly had no power to provide that an act should take effect and be in force from and after its passage. To hold otherwise is to ignore the mandatory provision requiring that a bill shall be presented to the Governor for his approbation before it becomes a law. Const., Art. 4, Sec. 38; Art. 5, Sec. 9. The Constitution of 1865, simply says: "Every bill which shall have been passed by both houses. of the General Assembly, before it becomes a law,  shall be presented to the governor for his approbation," and allows him ten days (Sunday excepted) for its consideration.   It does not make it the duty of any one to present the bill to the Governor, nor fix the time when it shall be done.   A bill may therefore be submitted to the Governor on the day it was passed, or at any other time during the sitting of the General Assembly, but in no event can become a law until it has been so presented. How, then, can it constitutionally be provided that a bill shall take effect from its passage?   (3)   Since the Act of March 18, 1875, amending the homestead law, did not go into effect till June 16, 1875, after the death

of Martin Asher, the homestead vested by operation of law in his widow, Sarah Asher, in fee, and by her deed of November 29, 1878, was transferred to Elizabeth Asher and A. P. Asher, who conveyed by deed of May 3, 1881, lots 10 and 11 to William Stringer, from whom defendant obtained title by deed dated May 26, 1891.(4) The court below erred in receiving in evidence, over the objections of defendant, the paper purporting to be the last will of Martin Asher, deceased. A certificate of probate was granted by the clerk in vacation, but, unlike the cases in which this court has indulged the presumption that the act of the clerk had been confirmed by the court, the evidence in this case is direct and undisputed that there never was an order of court confirming the act of the clerk in vacation, or admitting the will to probate. Nor can any weight be attached in this case to the fact of recording. The will was filed June 29, 1875, probated by the clerk July 3, and recorded within two days afterwards, on July 5, 1875. The court met in regular session on July 26, 1875. The only acts shown by the evidence to have been done by the court are the approval of the act of the clerk in vacation in granting letters and taking bond, and the approval of the settlements made by the executors. If this is confirmation of the probate of the will by the clerk in vacation the statute is meaningless. This court has decided time and again that a will not probated is ineffectual to pass title and is not admissible in evidence. Farris v. Burchard, 242 Mo. 1; Snuffer v. Howerton, 124 Mo. 637.

*L. M. Henson and Mozley & Woody* for respondents.

(1) The statute cutting down the widow's homestead right from an estate in fee to a life estate took effect and became operative on the 18th day of March, 1875, prior to the death of Martin Asher. This being true, his widow took a life estate and not the fee, and her deed passed only such estate, which estate termi-

nated at the date of her death in 1913. Laws 1875, p. 60;
G. S. 1865, ch. 5, sec. 4, p. 76; Neff v. McGuire, 52 Mo.
493; Swan v. Buck, 46 Miss. 269; Poole v. Brown, 98
Mo. 680; Poland v. Vesper, 67 Mo. 727; Ailey v. Burnett,
134 Mo. 313; Burgess v. Bowles, 99 Mo. 543; Davidson
v. Davis, 86 Mo. 440; Bushnell v. Loomis, 234 Mo. 371.
(2) The will was presented to the clerk of the county
court on the 29th day of June, 1875. The proof of David
Duffy and Isom Keith, subscribing witnesses, was taken.
That of the remaining subscribing witness, Stephen
Chapman, was taken on the 2nd day of July, 1875, be-
fore a commissioner of Butler County. On July 3, 1875,
the will was admitted to probate by the clerk of the
county court and the will itself was recorded in the
office of said clerk in a book kept for that purpose. On
August 3, 1875, in vacation, letters testamentary were
granted to the executors named in the will. This act of
the clerk was afterwards approved by the court in
term time. The estate was administered under the pro-
visions of the will. All of the debts of the testator
were paid, all of the legacies provided in the will were
paid, and in 1878 the executors were discharged. The
act of the clerk in admitting the will to probate was,
by the above orders made in said estate, confirmed by
the court. 16 Enc. Pl. & Pr. 1043; 40 Cyc. 1343; In re
Will of Warfield, 22 Cal. 51, 83 Am. Dec. 49; Holliday
v. Ward, 19 Pa. St. 483, 57 Am. Dec. 671; Jourden v.
Meier, 31 Mo. 40; Creasy v. Alvison, 43 Mo. 13, l. c.
20; Rothwell v. Jamison, 147 Mo. 601; Hartwell v.
Parks, 240 Mo. 527; Lackland v. Stephenson, 54 Mo.
108; Farris v. Burchard, 262 Mo. 334; Macy v. Stark,
116 Mo. 481. (3) The county court of Stoddard County
had exclusive jurisdiction of the probate of wills and the
administration of estates under the provisions thereof.
It obtained jurisdiction of this particular will and the
estate of Martin Asher by reason of the filing of his
will in the office of the clerk. This court administered
the estate through the executors nominated in the will,
paid the debts and legacies, approved the final settlement

and discharged the executor. Every presumption will be indulged that the court confirmed the will and in the absence of some fact, recital or statement contained in the records of the court with reference to this estate which shows affirmatively that the will was rejected, the above presumption becomes conclusive. Bingham v. Kollman, 256 Mo. 589; Skillman v. Clardy, 256 Mo. 297; Hartwell v. Parks, 240 Mo. 537; Chlanda v. Transit Co., 213 Mo. 260; Macy v. Stark, 116 Mo. 481; Carey v. West, 139 Mo. 136; Farris v. Burchard, 262 Mo. 334.

(4)   Practically forty years had elapsed since this will was probated and the estate administered under its provisions. While the estate was in the probate court, all the parties acted on the presumption that the will was properly probated. It is now too late for either of the interested parties or their grantees to question the probate of this will. Chap. 145, R. S. 1879, secs. 29 and 31; Jourden v. Meier, 31 Mo. 40; Lackland v. Stephenson, 54 Mo. 108; Stowe v. Stowe, 140 Mo. 594; Hans v. Holler, 165 Mo. 47.

GRAVES, J.—The petition in this case contains two counts, (1) one to quiet title and (2) one in ejectment. Each is conventional in form.

To the first count of the petition the defendant answered (1) by admitting his possession and admitting his claim of title, and averring that he held the record title from the patentee down and a general denial of other matters, and (2) the ten-year Statute of Limitations is invoked. To the second count he answered (1) by admitting his possession, claiming ownership, and denying other matters, and (2) a plea of the ten-year Statute of Limitations, and (3) a plea of the 24-year Statute of Limitations.

Reply was a general denial. Judgment for plaintiffs and defendant has appealed.

The facts of this case are simple and to the point. The land involved is conceded to be a part of the homestead of one Martin Asher, who is the common source

of title. Martin Asher died testate on May 5, 1875. At this point dates are material. He left as his widow, Sarah Asher and a son, A. P. Asher. The fourth and fifth clauses of the will read:

"Fourth: I give and devise to Elizabeth Asher, wife of my son Arthur P. Asher, and the heirs of her body, all of my real and personal estate, after all my just debts, liabilities and the legacies herein provided for are paid off and satisfied that shall then be remaining and not herein disposed and to their heirs.

"Fifth: It is not intended herein to interfere with my wife's personal dower."

The due probate of this will is denied and this becomes a question for decision.

Using the language of appellant's counsel:

"The residuary devisee, Elizabeth Asher, wife of Arthur P. Asher, had three children, one of whom died in early infancy, and two who were living at the time of their grand-father's death, namely, Thomas Asher and Rachel Asher.

"Thomas Asher survived his father A. P. Asher and died, unmarried and without issue, leaving his mother Elizabeth and his sister Rachel surviving. Elizabeth Asher died October 12th, 1912. Rachel Asher married Haywood Cook, by whom she had three children, Effie, Woody and Haywood Cook, who are the plaintiffs in this suit."

Learned counsel for appellant further outlines his claim thus:

"Defendant claims under Sarah Asher, the widow of Martin Asher, on the theory that she took the homestead in fee, and under A. P. Asher, the son of Martin Asher, if the widow took a life estate only, because the will of Martin Asher was not probated and therefore ineffectual to pass title and A. P. Asher took by descent from his father.

"Sarah Asher, the widow of Martin Asher, married Edward Shipman on the 29th day of August, 1875, and after his death was married to Joseph A.

Morris on January 8, 1877. On the 29th day of November, 1878, by the name of Sarah Morris, she and her husband executed a deed to Elizabeth Asher and A. P. Asher, conveying lots 10, 11 and 14 of section 5, township 25, range 8, the identity of the grantors being established by the following recital in the deed:

"'This indenture made on the 29th day of November, A. D. one thousand, eight hundred and seventy-eight, by and between Sallie Morris, late Sallie Shipman, late Sallie Asher; and Joseph Morris, her husband, of the County of Stoddard and State of Missouri, parties of the first part, and Elizabeth Asher and A. P. Asher of the County of Butler and State of Missouri, witnesseth, etc.'

"Elizabeth Asher and A. P. Asher, her husband, transferred lots 10 and 11 to William Stringer by warranty deed dated May 3, 1881, and William Stringer conveyed the same by warranty deed, dated May 26, 1891, to the defendant, Louis Robinson, who has ever since claimed title and held possession.

"Memoranda of conveyances:

"Sarah Morris and husband, quit claim, to Elizabeth Asher and A. T. Asher, lots 10, 11 and 14, Nov. 29, 1878.

"Elizabeth Asher and A. P. Asher, warranty, to William Stringer lots 10 and 11, May 3, 1881.

"William Stringer, warranty, to Louis Robinson, May 26, 1891."

Counsel for respondents concisely state their case thus:

"Martin Asher left surviving him a widow, Sallie (or Sarah) Asher, who afterwards married a Shipman and then a Morris, and Arthur P. Asher, a son. Item 4 of his will, provides as follows:

"'Fourth: I give and devise to Elizabeth Asher, wife of my son, Arthur P. Asher, and the heirs of her body, all of my real and personal estate, after all my debts, liabilities and the legacies herein provided for

are paid off and satisfied that shall then be remaining and not herein disposed of, and to their heirs.'

"Elizabeth Asher had three children, Thomas and Rachel, and one child that died in infancy. Thomas died when he was about twenty years old and left no children. Rachel Asher married Haywood Cook. She died September 20, 1911, leaving plaintiffs as her only heirs, they being the grandchildren of Elizabeth Asher. Elizabeth Asher died October 12, 1912, and Sallie Asher, the widow, died in the year 1913.

"Plaintiffs claim title to the land in controversy as residuary legates under the will of Martin Asher. Defendant claims by mesne conveyance from A. P. Asher, the only heir of Martin Asher.

"Defendant contends that the judgment rendered by the circuit court in this cause, should be reversed for the following reasons:

"1.   That the lands in controversy constituted the homestead of Martin Asher, and passed to his widow in fee, under the Homestead Act of 1865, which title he acquired by mesne conveyances.

"2. That the will of Martin Asher was not legally probated and hence did not convey the title to these lands, but that the same passed to A. P. Asher, as the only heir of Martin Asher, and that defendant has his title."

From the foregoing can be gathered the real issues. In the brief of appellant we find nothing upon the Statutes of Limitation, and he evidently abandons those defenses.

I.   The counsel for respondent, as quoted in the statement above, have pointedly stated the two contentions of the defendant.   The defense of the Statute of Limitations dropped from the case and is not even urged or briefed here.   There is no question
**Points for Decision.** that if Sarah Asher, the widow of Martin Asher, in fact and law acquired a fee to this land by virtue of the Homestead Act of 1865, the defen-

dant has acquired this title. Further, if the widow afore-
said, did not get the fee, but only a life estate, and the
will of Martin Asher was not duly probated, then the
fee passed from A. P. Asher to this defendant. A. P.
Asher was the only child of Martin Asher, and absent
a will, he would take by descent. The defendant puts
all his eggs in the two baskets. In effect he conceded
that plaintiffs are entitled to recover, unless under one
or the other of the two theories he acquired title. The
two theories are (1) that the widow became possessed
of a fee estate in this homestead upon the death of
Martin Asher and defendant has her title; (2) that
although he did not get the fee in this manner, yet
Martin Asher's will was never duly probated, and A. P.
Asher was the only heir, and defendant procured both
his title and the title of the widow, whatever it was.
If defendant is right in either of these contentions he
has standing in the case; otherwise he, in his brief,
claims none. The questions we take in order.

II. The contention is that the Act of March, 1875,
(Session Laws 1875, p. 60), by which the widow's in-
terest in the homestead was reduced from a fee to a
life estate, did not go into effect until
June 16, 1875, or ninety days after its
passage. This in face of the fact that Sec-
tion 3 of the act reads:

**Law: When Effective.**

"This act shall take effect and be in force from
and after its passage."

Appellant contends that this section is unconstitu-
tional, and contrary to the general statute relating to
the time at which bills should become laws. The Con-
stitution of 1875 was not effective when this Act of
1875 was passed. The act was approved by Governor
C. H. Hardin on March 18, 1875. From the Senate
Journal (the bill originated there) it appears that on
March 18th the committee on Enrolled Bills reported
that they had examined and found correctly enrolled
Senate Bill 52 (the law involved here), "and had

presented the same to his Excellency, the Governor for his consideration.'' [Senate Journal of 1875, p. 491.] On the same day by the same record (Senate Journal of 1875, p. 488) it is shown by the message of the Governor, therein and thereat incorporated, that he had approved the said bill. The bill as approved contained said Section 3 aforesaid.

In Article V, Sec. 9, Constitution of 1865 (under which this new law was passed), it is provided:

''Every bill which shall have been passed by both houses of the General Assembly, before it becomes a law, shall be presented to the Governor, for his approbation. If he approve, he shall sign it; if not, he shall return it, with his objections, to the house in which it shall have originated; and the house shall cause the objections to be entered at large on it journals, and shall proceed to reconsider the bill. After such reconsideration, if a majority of all the members elected to that house shall agree to pass the same, it shall be sent, together with the objections, to the other house, by which it shall, in like manner, be reconsidered; and if approved by a majority of all the members elected to that house, it shall become a law. In all such cases the votes of both houses shall be taken by yeas and nays, and the names of the members voting for and against the bill shall be entered on the journals of each house, respectively. If any bill shall not be returned by the Governor within ten days (Sundays excepted) after it shall have been presented to him, the same shall become a law, in like manner as if the Governor had signed it, unless the General Assembly, by its adjournment, shall prevent its return; in which case it shall not become a law, unless the Governor, after such adjournment, and within ten days after the bill was presented to him (Sundays excepted), shall sign and deposit the same in the office of the Secretary of State; in which case it shall become a law, in like manner as if it had been signed by him during the session of the General Assembly.''

Here we have the record showing the presentation of the bill and the report of the Governor to the effect that he had signed it, and further the records of the Secretary of State's office showing the original signed bill. All are to one effect.

The point urged is, as I gather it from the brief, that the Governor did not have to sign a bill on the day of its passage, and hence the section reading, "This act shall take effect and be in force from and after its passage," is unconstitutional. Counsel also suggest that Section 4, page 76, of General Statutes of 1865, is effective here. This section reads: "All acts of the General Assembly shall take effect at the end of ninety days after the passage thereof unless a different time is therein appointed."

The legislative authority in Missouri is not wholly with the General Assembly. The Governor is a factor in legislation. When the General Assembly used the clause "after its passage" as it did in Section 3 of the act, it meant after the signature and approval of the Governor, or in the event he vetoed it, the final passage over his veto, as provided in the Constitution. It would be far-fetched to say that the legislative body meant that the law should become effective without the presentation to the Governor. We can see no merit in this contention. To hold that this clause in this act violated the Constitution would be to invalidate a great many like sections of laws in this State. Nor is there substance in the contention that it violated the general laws then existing for fixing a date upon which signed bills should become laws. The general law, quoted supra, simply provides that such signed bills shall become effective laws within ninety days after their passage "unless a different time is therein appointed." This act did appoint a different time. The exact time became fixed, when the Governor on March 18th signed the bill. The bill had then fully succeeded in its passage over the Legislative course. We hold therefore that the Act of 1875 became an

effective law on March 18, 1875, and that the widow in this case did not take the fee in the homestead. Such seems to be the trend of our holdings. Thus in Poland v. Vesper, 67 Mo. 727, we held that the homestead could be sold for debts, subject to the homestead rights. Vesper died March 25, 1875, or just seven days after the Governor signed the Act of 1875 on March 18th of that year. We could not have so held, without holding that the Act of 1875 became effective prior to Vesper's death on March 25th. Because if it was not effective Vesper's widow had the fee, and there was nothing to sell. This ruling was consistently followed, until we later changed the homestead law.

The defendant therefore could not have acquired more than a life estate through the deed of the widow. This life estate had fallen in prior to this suit by the death of the widow.

III. The will of Martin Asher was presented to the clerk of the county court on 29th day of June, 1875. Proof of the subscribing witnesses was taken, the concluding part being on July 3, 1875. The **Proof of Probate.** will was on that date admitted to record by the clerk of the court, and letters testamentary granted to Joel Hobbs and Lawson A. Taylor, the executors named in the will, on August 3, 1875. The estate was fully administered under the term of the will, all debts and legacies paid under the terms of the will, and the executors discharged in 1878. The contention is that there is no formal order admitting the will to probate.

The record of the court does show the following:

"Estate of Martin Asher, Dec'd.

"Ordered by the court that the bond taken and the letters testamentary granted to Joel Hobbs and Lawson A. Taylor, by the clerk of this court in vacation, be and the same are hereby approved."

Then, as above said, the court records do show the settlements and other estate matters, until the close

of the estate. This sufficiently shows the probate of the will. With its probate, the alleged interest of A. ·P. Asher drops out. So that the defendant acquired no interest by the deeds to him, save and except the life interest of the widow, which fell out upon her death.·

·    No other matters appearing on this record, it follows, that the judgment *nisi* was correct, and should be affirmed. All concur; *Bond, J.,* in paragraph 3 and in the result.