STATE OF MISSOURI at the Relation of GEORGE S. MONTGOMERY, FRED W. KLABER and WALTER L. YOST, Judges of the County Court of Jackson County, Missouri, v. BEN NORDBERG, Clerk of the County Court of Jackson County, Missouri, and TRUSTON W. KIRBY, County Treasurer of Jackson County, Missouri, Appellants.—No. 39824. —193 S. W. (2d) 10.

Court en Banc, February 25, 1946.

*Edwin A. Harris* for appellants.

*Hilary A. Bush,* County Counselor, *Roy B. Thomson, Robert B. Fizzell* and *Stinson, Mag, Thomson, McEvers & Fizzell* for respondents.

954

■ ELLISON, J.—By mandamus in the circuit court of Jackson county the respondent judges of the county court of that county obtained a peremptory writ requiring the appellants county clerk and county treasurer to execute, certify and register $165,000 in tax anticipation notes, dated January 18, 1946, and payable out of the county general revenue fund for the fiscal and calendar year beginning January 1, 1946, the issuance of which notes had been authorized by the county court under Sec's 7837-7847.[1] On this appeal the appellants renew their challenge made in the court below of the legality and validity of the notes, under Sec. ■ 23, Art. IV, Const. Mo. 1945, and certain statutes to be mentioned.

The principal issue in the case is whether said Section 23 of the new Constitution, which provides the fiscal year "of the state and all its agencies" shall begin on July 1 each year, includes and applies to counties. Appellants contend that it does. The question is pressing because the General Assembly has passed with an emergency clause and the Governor on December 18, 1945 approved, House Bill No. 721 providing that the fiscal year of counties shall commence on January 1 save in those with special charters providing otherwise. This statute would be unconstitutional if appellants are right.

■ Appellants' contention that the constitutional provision, supra, does apply to counties, is based on the fact that it expressly covers all the "agencies" of the State. Authorities are cited holding that a county is a state agency. Thus, it was ruled in State ex rel. St. Louis Police Com'rs v. St. Louis County Court, 34 Mo. 546, 572, that "the county is not a private corporation, but an agency of the state Government, . . . ." And State ex rel. McWilliams v. Little River Drain. Dist., 269 Mo. 444, 457, 190 S. W. 897, 900, declared that in

[1]Reference to sections of our statutes are to R. S. 1939 and same section numbers in Mo. R. S. A., unless otherwise indicated.

dealing with public highways, etc., "the several counties and the county courts thereof are but agencies, or agents of the State; . . . ." Other more general authorities referred to are: 14 Am. Jur., sec. 5, p. 188; 20 C. J. S., sec. 1a, p. 754; 1 McQuillin Municipal Corporations (2 Ed.), sec. 88, p. 252, sec. 136, p. 414.

Still other Missouri decisions are cited to show that even if a county is not an "agency" of the state, it is at least a political subdivision thereof; and appellants argue that Sec. 23, supra, of the new Constitution must cover counties since it covers the whole state of which the counties are a part. In this connection State ex rel. Exchange Bank v. Allison, 155 Mo. 325, 331, 56 S. W. 467, 469 is stressed. There, the statute of 1865 made the fiscal year of the state commence on October 1, and subdivisions were not mentioned. In 1868 the statute was amended by substituting January 1 for October 1 as the date of commencement. The court en banc ruled the change applied to counties.

The reasoning of the decision was that the revenue of both the State and counties was collected at the same time by the same officers; and if the Legislature had intended to set one time limit for the State and another for the counties it would have said so in the amendment, failing in which it was to be concluded that both were intended to be affected alike. Further, the opinion showed that when the foregoing amendment was enacted, changes were made in other statutes to conform thereto—as that the date of settlement by the county collector with the county court was shifted from December to March, thus indicating county taxes were affected. So much for appellants' contentions.

Respondents contend the mere use of the word "agencies" in the particular constitutional provision, Sec. 23, Art. IV, supra, does not warrant the conclusion that counties were intended to be included, notwithstanding they are agents of the State in many local matters, and in all matters subordinate to it. The well established rule is invoked that the instrument must be read as a whole, insofar as other parts may throw light on the subject under investigation. State ex inf. McKittrick v. Williams, 346 Mo. 1003, 1013, 144 S. W. (2d) 98, 103 (10). And respondents maintain that the word "agencies," as so interpreted, means *administrative agencies* of the State under a centralized executive control. They point to many other sections of the Constitution indicating that the word does refer to these larger agencies.

Thus, Sec. 31, Art. I definitely treats state agencies as administrative agencies. It says no commission, bureau, board "or other administrative agency" shall have authority to make a rule fixing a fine or imprisonment as punishment. Sec. 47, Art. III denominates the controlling authority over state parks as "an agency." Sec. 12, Art. IV declares the executive department shall include the

six elective state officers, and ten departments; and that unless discontinued, all present or future administrative. boards, bureaus, commissions and ''other agencies'' of the State shall be assigned by the Governor to the proper department. Under Sec. 13, Art. IV, the state auditor *post*-audits the account of all ''state agencies''; but for ''political subdivisions'' he *audits* them. Sec. 22, Art. IV empowers the Department of Revenue to collect all taxes due the state, except that *county* and township collectors collect the state tax on tangible property until otherwise enacted. That department also prepares for the Governor and General Assembly data on receipts and expenditures of all ''state agencies.''

Then .comes Sec. 23, involved in this case. In connection with shifting the beginning of the fiscal year' for the ''state and all its agencies'' from January 1st to July 1st, the section also authorized a special legislative appropriation for the six months ending June 30, 1945. This evidently was to take up the slack caused by the change in the beginning of the fiscal year. But that in turn plainly implies the shift was regarded as affecting only such entities as were supported by legislative appropriations; and that no such change had been made in counties requiring similar provision for or authorization to them.

It will be noted that the foregoing Article IV of the Const. 1945 entitled ''Executive Department'', deals with the state at large. The provisions covering ''state agencies'' are many, but counties are only mentioned twice [Sec's 22 and 37], and legal or political subdivisions twice [Sec's 13 and 37]. On the other hand, in Article VI, entitled ''Local Government'', the first section declares the existing counties ''are hereby recognized as legal subdivisions of the state.'' And thereafter counties are dealt with in almost every section. In particular, it should be observed that although Sec's 22 and 24 of Art. IV had already dealt with budgets for ''state agencies'', yet they appear to have been regarded as not covering counties, because Sec. 24, Art. VI provides [or, unnecessarily provides again if the .above view is incorrect] that ''all counties, cities, other legal subdivisions of the state'' shall have an annual budget.

We shall follow these provisions of the new Constitution of 1945 only a little further. Sec. 3 of Art. X is important. It provides in part that all taxes ''shall be payable during the fiscal *or* calendar year in which the property is assessed.'' Respondents suggest that this provision was inserted in order to permit the state and its agencies to operate on the basis of the new fiscal year provided therein by Sec. 23, Art. IV, supra, and also to allow counties to continue to operate on a calendar year basis under Sec. 26a, Art. VI. We shall not attempt to rule on these matters further than is necessary to the decision of this case. But we agree that Sec. 3, Art. X, supra, clearly furnishes a basis upon which counties may operate by calendar

years, whereas the state and agencies covered by Sec. 23 operate on a fiscal year basis, beginning July 1.

An examination of the Journal of the Constitutional Convention discloses that the main purpose prompting the adoption of Sec. 23 was to facilitate state bookkeeping, so to speak. Thus it was stated by Dr. McCluer, on the 145th day, Friday, May 19, 1944, p. 2417: "The principal change is in the date of the fiscal year from the calendar year to the dates as indicated, a change which is desirable to bring the fiscal business of the state in line with that of the nation and for other reasons that were set forth by representatives of the State Auditor's office."

Again, Mr. Hemphill, apparently reading from a memorandum prepared by the State Auditor, said: "The efficiency of every department of the state government would be materially benefited and the lost motion which occurs during the first six months period following the meeting of the Legislature will be done away with. . . .

"If this change is made, the only confusion which would result is the confusion which would still exist in cities and counties where the fiscal year and the calendar year coincide. However, this could easily be corrected by the Legislature when it next meets, by creating a statute fixing the fiscal year of the county and the city the same as the fiscal year of the state."

This obviously was a concession that Sec. 23, supra, had not taken the matter out of the hands of the Legislature, and therefore had left them free to put the fiscal year of counties on a calendar basis as they have done by House Bill 721, supra.

Only one more thing. Going back to the Exchange Bank-Allison case, reviewed in the tenth preceding paragraph. The point was made in that case that since the state and counties had been collecting revenue at the same time and in the same way, if the Legislature had intended to create a fiscal year for the state different from that for the counties, it would have so provided in the amendatory act. Here, we think that argument points the other way. The Constitutional Convention was adopting an entire new Constitution—unlike a legislative act dealing only with one subject. The Convention was framing a fiscal plan not only for the state and its central agencies, but also for counties, townships and cities. Therefore, is it not fair to say that if the Constitutional Convention had intended to change the fiscal year for counties it would have said so? As stated, Art. 3, Sec. X expressly contemplates that taxes may be made payable "during the fiscal or calendar year" in which the property was assessed, which certainly is a concession that it may be assessed on the basis of either period.

The judgment of the circuit court is affirmed. All concur.