STATE of MISSOURI ex rel. J. B. MOORE, Relator-Appellant-Respondent, v. WALTER H. TOBERMAN, Secretary of State of the State of Missouri, Respondent, FRED V. HEINKEL, RUSSELL J. ROSIER, H. E. KLINEFELTER and JAMES M. SILVEY, JR., Interveners-Respondents-Cross-Appellants, and

J. B. MOORE, Appellant-Respondent, v. WALTER H. TOBERMAN, Secretary of State of the State of Missouri, Respondent, FRED V. HEINKEL, RUSSELL J. ROSIER, H. E. KLINEFELTER and JAMES M. SILVEY, JR., Interveners-Defendants-Respondents-Cross-Appellants, Nos. 43288 and 43289—250 S. W. (2d) 701.

Court en Banc, July 14, 1952.

246

*Alden A. Stockard, William Barton, James A. Potter* and *Charles C. Madison* for appellants.

248

*J. E. Taylor,* Attorney General, *Arthur M. O'Keefe* and *Gilbert Lamb*, Assistant Attorneys General, for respondent, Walter H. Toberman, Secretary of State.

*A. D. Sappington, William W. Beckett* and *William H. Becker* for respondents Fred V. Heinkel, Russell J. Rosier, H. E. Klinefelter and James M. Silvey, Jr.

*Joseph K. Owens,* amicus curiae.

HOLLINGSWORTH, J.—On the 8th day of July, 1952, these two cases came to the writer on reassignment.

The relator-appellant-respondent Moore and the interveners-defendants, cross-appellants Heinkel et al., appeal from judgments of the Cole County Circuit Court in two consolidated cases against the respondent Secretary of State, one in mandamus and the other for a declaratory judgment. Both present essentially the same issues. The ultimate question for determination is whether Senate Bill 267, enacted during the last session of the 66th General Assembly, dividing the State into eleven new congressional districts, is now in effect or is suspended under the referendum provisions of the Constitution.

The facts are not in dispute.

On January 21, 1952, the 66th General Assembly enacted Senate Bill 267 apportioning the State into eleven new congressional districts. Thereafter, on the same day, by concurrent resolution, it prescribed that all laws previously passed and not then effective, including Senate Bill 267, should take effect ninety days thereafter or on April 22, 1952, and then recessed for more than thirty days. On March 5, 1952, Senate Bill 267 was approved by the Governor.

On April 19 and 21, 1952, referendum petitions from congressional districts one to thirteen, inclusive, designed to refer Senate Bill 267 for a vote of the people, were tendered to the Secretary of State, who accepted and filed said petitions and ruled that, on their face, they were legally sufficient and were signed by at least five percent of the legal voters in at least each of two-thirds of the congressional districts as measured by the total vote for governor at the general election of 1948. On April 24, 1952, he officially declared he intended to take the constitutional and statutory procedures to refer Senate Bill 267 for approval or rejection by the people at the general election to be held on November 4, 1952.

On May 3, 1952, interveners filed in the Circuit Court of Cole County, Missouri, a suit for injunction praying that the Secretary

of State be enjoined from referring Senate Bill 267. A temporary restraining order was issued and is still in force. On June 2, 1952, interveners commenced in that suit the presentation of evidence to sustain their prayer for a temporary injunction, and, on the next day, all parties conceded, and now agree, that the referendum petitions, previously tendered to the Secretary of State, from the third, fifth, tenth, eleventh and thirteenth congressional districts are legally insufficient and are not signed by five percent of the legal voters of such congressional districts, as measured by the total vote for governor at the general election of 1948.

On May 29, 1952, prior to the presentation of evidence in the injunction suit, appellant Moore tendered to the Secretary of State twenty-one supplemental referendum petitions identical in form and substance, except for signatures, to those petitions previously filed on April 19 and 21, 1952, containing signatures of 499 legal voters, among which were 228 valid signatures on petitions from the tenth congressional district. The Secretary of State [703] refused to accept and file said twenty-one referendum petitions.

All parties agree that the number of valid signatures theretofore filed from the tenth congressional district, if augmented by the 228 supplemental and valid signatures, constitutes a legally sufficient petition for said tenth district; and that, disregarding the legally insufficient petitions for the third, fifth, eleventh, and thirteenth districts, such petitions for the tenth district and the admittedly legally sufficient petitions for the first, second, fourth, sixth, seventh, eighth, ninth and twelfth districts, amounting in the aggregate to legally sufficient petitions from two-thirds of all districts, authorizes the Secretary of State to refer Senate Bill 267 to a vote of the people at the general election to be held November 4, 1952, if said bill is otherwise referable.

The trial court adopted the following conclusions of law and entered judgments accordingly:

"1. Senate Bill 267 is subject to the referendum provisions of Section 52, Article III of the Constitution of 1945.

"2. Since Senate Bill 267 became effective April 22, 1952, by virtue of Senate Concurrent Resolution No. 13 of the General Assembly, the right of the relator [Moore] and others to file petitions to refer said bill expired on April 22, 1952.

"3. The filing of petitions for referendum prior to April 24, 1952, which said petitions have been proved to be legally insufficient, did not suspend the effective date of Senate Bill 267 nor extend said effective date beyond April 22, 1952.

"4. Petitions to refer Senate Bill 267 filed May 29, 1952, might be filed as petitions supplemental to those filed prior to April 24, 1952, and considered an addition to those filed prior to April 24, 1952, if timely filed.

"5. The petitions tendered to respondent on May 29, 1952, by the relator were not timely filed.

"6. The respondent Secretary of State should not be compelled to accept and file the petitions to refer Senate Bill 267 which were tendered to him for filing on May 29, 1952.

"7. This Court should not issue its peremptory writ of mandamus to compel the respondent to accept and file the said petitions tendered to him on May 29, 1952."

Appellant Moore's appeal is from the judgments on the merits. Interveners Heinkel, et al., are satisfied with the result of the judgments and appeal only as to the part thereof holding that Senate Bill 267 would have been referable upon the timely filing of petitions therefor.

This appeal presents two basic issues:

(1) Whether under the provisions of § 29, Art. III, of the Constitution, Senate Bill 267 became effective on April 22, 1952;

(2) And, if it did become effective, then whether under the provisions of § 52(a), Art. III, of the Constitution, it may at any time within ninety days after the final adjournment of the general assembly on April 30, 1952, be suspended by referendum.

Section 29 provides: "No law passed by the general assembly shall take effect until ninety days after the adjournment of the session at which it was enacted, except [certain laws not involved in this case]; provided, if the general assembly recesses for thirty days or more it may prescribe by joint resolution that laws previously passed and not effective shall take effect ninety days from the beginning of such recess."

Appellants contend that this section refers only to *laws passed* by the general assembly and that inasmuch as the governor had not approved Senate Bill 267 prior to the recess (he approved it on March 5, 1952), it was not a *law passed* by the general assembly within the meaning of the section. They point out that § 30, Art. III, requires that after a bill has been passed it shall be signed by the presiding officer in open session (that was done in the instant [704] case prior to the recess); that § 31, Art. III, provides "If the bill be approved by the governor *it shall become a law*"; and that §§ 32 and 33 provide the manner by which a bill either vetoed or not returned by the governor *shall become a law* if the general assembly so declares in the manner and form therein provided.

They then argue that in no other way may a bill become a law and that on January 21, 1952, the date of the resolution and recess, Senate Bill 267 was not a law. Nichols v. Robinson, 277 Mo. 483, 211 S.W. 11, is cited in support of that contention. In that case, the question was whether under the Constitution of 1865 a certain law relating to homestead *went into effect* ninety days after passage thereof or from and after its passage. It was held that under the

Constitution of 1865 all laws became effective ninety days after passage unless a different time was therein appointed, and that the bill itself appointed a different time, to-wit: from and after its passage, which this court held in that case to be from and after its approval by the governor. In the course of that opinion the court said: "The legislative authority in Missouri · is not wholly with the General Assembly. The governor is a factor in legislation. When the General Assembly used the clause 'after its passage,' as it did in section 3 of the act, it meant after the signature and approval of the Governor, or, in the event he vetoed it, the final passage over his veto, as provided in the Constitution. It would be far-fetched to say that the legislative body meant that the law should become effective without presentation to the Governor."

But that is far afield from the point here involved. No one questions the fact that a law becomes effective only after approval of the governor or his veto thereof or failure to return it is overridden by the legislature in the manner provided by §§ 32 and 33, and then only at the time prescribed by the Constitution, which is either ninety days after adjournment of the session or ninety days from the beginning of a recess of more than thirty days and the prior adoption of a joint resolution as provided in § 29.

The phrases "law passed by the general assembly" and "laws previously passed", as used in § 29, cannot be limited to laws passed by the general assembly *and approved by the governor*. The governor is no part of the general assembly. The Constitution, § 1, Art. III, expressly states: "The legislative power shall be vested in a senate and house of representatives to be styled 'The General Assembly of the State of Missouri'." Thus only the general assembly *passes* laws. When it has passed a *bill*, if that word is preferred, the bill is a *law* insofar as the legislative power is vested in the general assembly to make it so; and we think that is the clearly intended meaning of the word "law" as used in the aforesaid phrases of § 29.

The distinction between "law passed by the general assembly" and "law passed by the general assembly *and approved by the governor*" is made quite clear by reference to § 36 of the Constitution of 1875, as amended in 1943, from which present § 29 is taken. The old section provides: "No law passed by the General Assembly, except appropriation acts, shall take effect or go into force until ninety days after enactment and approval thereof as otherwise provided by this Article, * * *." There the distinction is specifically stated. No one will contend that when the phrase in old § 36, "No law passed by the general assembly", was brought forward into present § 29 a different meaning was given it. The only changes contemplated or made were the two changes in the effective dates of laws from ninety days after enactment and approval to either (1)

ninety days after final adjournment or (2) ninety days after the beginning of a thirty or more days' recess.

The fact that the governor did not approve the bill until after the beginning of the recess does not arrest its becoming effective ninety days after the beginning of the recess if he signed it within forty-five days thereafter, which he did. Under the provisions of § 31, he had the right to approve it within forty-five days after the beginning of the recess without rendering it ineffective under the ninety days' effective date fixed by the proviso in § 29. The [705] reason for giving the governor forty-five days after beginning of the recess or final adjournment in which to approve or veto laws passed is obvious. A mass of legislation which has been studied in committees and debated in both houses is made ready for final passage. Immediately prior to the recess or final adjournment a large number of these bills are passed. Clearly, the governor must have time to study them; yet, a uniform date should be, and was, fixed for their becoming effective: hence, the forty-five and ninety day provisions. Neither conflicts with the other.

The provision of § 31 giving the governor the right to approve or veto bills forty-five days after final adjournment or beginning of the recess expressly applies to both the general provision of § 29 and the proviso thereof. It will not be contended that the general provision of § 29 that ''No law passed by the general assembly shall take effect until ninety days after final adjournment'' is rendered ineffective if the governor does not approve a *law passed by* the general assembly until after adjournment, if he approves it within forty-five days thereafter. By the same token it cannot be logically contended that his failure to approve it before the beginning of the recess, but did approve it within forty-five days thereafter, renders it ineffective under the proviso of § 29. The end to be served in each instance is identical.

We think there can be no doubt that Senate Bill 267 became effective on April 22, 1952.

Now, may its effectiveness be suspended by § 52(a)? That section, insofar as applicable here, provides: ''A referendum may be ordered [except certain non-referable laws not here involved] either by petitions signed by five per cent of the legal voters in each of two-thirds of the congressional districts in the state, or by the general assembly, as other bills are enacted. Referendum petitions shall be filed with the secretary of state not more than ninety days after the final adjournment of the session of the general assembly which passed the bill on which the referendum is demanded.''

Taken literally, it is, at first blush, seemingly in conflict with the proviso of § 29. Shall one or the other provision be taken as controlling, to the exclusion of the other, as to the law here involved? To so hold would of necessity result in the nullification of one. Such,

a holding would be violative of every cardinal principle of construction of constitutional ambiguities or apparent conflicts.

It is not here amiss to briefly refer to some of these rules. In constitutional construction, the instrument must be read as a whole, insofar as other parts may throw light on other parts thereof. State ex rel. Montgomery v. Nordberg, 354 Mo. 952, 193 S.W. 2d 10; State ex rel. Kowats v. Arnold, 356 Mo. 661, 204 S.W. 2d 254. Courts should resolve seemingly conflicting provisions by harmonizing and rendering every word operative, if possible, so as to give effect to the whole. State ex rel. Crutcher v. Koeln, 332 Mo. 1229, 61 S.W. 2d 750. A construction which renders meaningless any of its provisions should not be adopted by the courts. State ex rel. Crow v. Hostetter, 137 Mo. 636, 39 S.W. 270. ''If a literal interpretation of the language used in a constitutional provision would give it an effect in contravention of the real purpose and intent of the instrument as deduced from a consideration of all its parts, such intent must prevail over the literal meaning. * *. *'' 12 C.J., Constitutional Law, § 44, p. 702; State ex rel. City of Carthage v. Hackmann, 287 Mo. 184, 229 S.W. 1078. ''Where the spirit and intent of the instrument can be clearly ascertained, effect should be given to it, and the strict letter should not control, if the letter leads to incongruous results, clearly not intended.'' State v. Romero, 17 N.M. 88, 100, 125 P. 617. It should never be construed to work confusion and mischief, unless no other reasonable construction is possible. State ex rel. Jamison v. St. Louis-San Franisco Ry. Co., 318 Mo. 285, 300 S.W. 274.

With these postulates in mind, we examine § 52(a) for the purpose of determining its scope and meaning. Is its purpose and effect such that notwithstanding Senate Bill 267 went into effect on April 22, 1952, [706] yet the filing of referendum petitions within ninety days after final adjournment will suspend its effectiveness until it is approved by the people at the November election?.

The proviso in § 29 has the specific purpose of remedying an intolerable situation that had arisen in this State due to the long sessions of the general assembly. Laws of great importance (but not coming within the meaning of the emergency clause) enacted during the early days of the session were delayed in their final effectiveness for as much as a year and more, oftentimes resulting in the defeat of the salutary purposes for which they were enacted. If that proviso is destroyed, then we will revert to the conditions that existed prior to its adoption. Furthermore, if bills that become effective under its provisions may be suspended by referendum at any time within ninety days after final adjournment, then great confusion will result and much mischief may ensue. No assurance can be attached to the validity of any action taken pursuant to a law made effective under the proviso; it may be suspended and eventually rejected by referen-

dum. We are told that more than 800 of such laws have been put into effect under the proviso of § 29. This is some indication of the extent to which future legislation will be hamstrung if that proviso is nullified.

To hold that § 52(a) has this effect would destroy the concept of the referendum. "Purpose of referendum is to suspend or annul a law which has not gone into effect and to provide the people a means of giving expression to a legislative proposition, and require their approval before it become operative as a law; and its purpose does not intend to invalidate a law already operative. * * *" 59 C.J., Statutes, § 230, p. 686. See also State ex rel. Arkansas Tax Commission v. Moore, 103 Ark. 48, 145 S.W. 199; State ex rel. Westhues v. Sullivan, 283 Mo. 546, 224 S.W. 327. There are cases to the contrary, but the weight of authority is as above stated. 28 Am. Jur., Initiative, Referendum, and Recall, § 46, p. 178.

Moreover, § 52 (b) clarifies beyond question the intendment and scope of the referendum provided in § 52(a). It provides: "* * * Any measure referred to the people shall take effect when approved by a majority of the votes cast thereon, *and not otherwise.*" This is a clear declaration that the referendum provided for in 52(a) is not intended to apply to laws that have become effective.

This does not mean that Senate Bill 267 was not subject to referendum prior to its effective date. To construe § 52(a) to prohibit referendum of laws made effective by § 29 would enable the general assembly to defeat the purpose of 52(a) by passing bills and then recessing for thirty days or more after prescribing by joint resolution that they should take effect ninety days after the beginning of the recess. Section 52(a) merely fixes the latest date in which referendum petitions may be filed in any event, to-wit: "not more than ninety days after the final adjournment * * *." Its provisions are not inconsistent with a construction of § 29 that would require the filing of such petitions within ninety days after the beginning of a recess of thirty days or more. It seems clear that the intendment of the framers of the Constitution was that all laws, except those declared non-referable, should be subject to referendum if petitions to refer them were duly filed before their effective date, which under the provisions of § 29 is either ninety days after adjournment of the session or ninety days after the beginning of the recess and adoption of the resolution therein provided. True, § 52(a) does not expressly so provide, but it is obvious its failure to do so is a mere oversight.

Unless it is so construed, the proviso of § 29 is nothing more than a breeder of confusion and mischief. There can be no sound reason for not construing § 52(a) to mean that referendum petitions as to referable bills passed under the proviso of § 29 may be filed within ninety days after the beginning of the recess. It will afford

.. 

the same amount of time, ninety days, for the circulation of the petitions and procurement of signatures. It will make of these sections, §§ 29 and 52(a), a congruous and harmonious whole, give equal effect to both, and avoid the intolerable confusion that inevitably will follow any other construction. [707] In so holding we will follow the cardinal principles above set forth.

The judgments of the trial court should be and are affirmed.

*Conkling, Tipton* and *Dalton, JJ.*, concur.

*Leedy, J.*, dissents and concurs in separate dissenting opinions of *Ellison, C.J.*, and *Hyde, J.*

*Ellison, C.J.*, dissents in separate opinion in which Leedy and *Hyde, JJ.*, concur.

*Hyde, J.*, dissents in separate opinion in which *Ellison, C.J.*, and *Leedy, J.*, concur.

ELLISON, C.J. (dissenting).—I respectfully dissent from the principal opinion and concur in the dissenting opinion of Hyde, J. on the following grounds.

As to referendums, Sec. 52(a), Art. III of the Constitution of 1945 provides now, as it has ever since 1908, that referendum petitions may be filed with the Secretary of State not more than 90 days after the *final adjournment* of the session of the General Assembly which passed the bill on which the referendum is demanded, save as to certain laws not subject to reference.

As to legislation, Sec. 29, Art. III of the Constitution of 1945 provides generally that no law passed by the General Assembly shall take effect until 90 days *after the adjournment of the session at which it was enacted.* But to it have been added an exception and a proviso. The exception covers appropriation acts, and acts passed with an emergency clause expressed in the preamble or body thereof. As to these the act may take effect sooner if both houses of the General Assembly so direct by a two-thirds vote of the membership. The proviso authorizes the General Assembly to recess for thirty days or more and to prescribe by joint resolution that laws previously passed and not effective shall take effect *90 days from the beginning of such recess.*

This section was a modification of Sec. 36, Art. IV, Const. 1875, adopted in 1943, Laws Mo. 1943, pp. 1080, 1088, providing that no laws except appropriation acts should take effect or go into force until 90 days *after enactment and approval*, save declared emergency measures passed by a two-thirds vote of all the members elected to each house. The same section in the Constitution of 1875 had provided that legislation in general and the general appropriation act should take effect and go into force 90 days *after the adjournment of*

*the session* at which enacted, save as to emergency measures passed by a two-thirds vote of all the members of each house directing otherwise.

But while these changes in the *effective date* of laws have been made, the time for *filing* referendum petitions has remained the same for forty-four years, since 1908, Sec. 57, Art. IV, amendment to Const. 1875. It has always provided, and still does in Sec. 52(a), Art. III, Const. 1945, that "Referendum petitions shall be filed with the secretary of state not more than ninety days after the final adjournment of the session of the general assembly which passed the bill on which the referendum is demanded."

The people did not change it when they adopted the then Sec. 36, Art. IV, Const. 1875 in 1943, and the same is true of the Constitutional Convention and the people when they retained the same provision in the Constitution of 1945. The Constitutional Convention of 1945 was a more elastic body, able to resort to research and iron out inconsistencies in the instrument. They did not do so. In my opinion this court is doing violence to the Constitution in holding Sec. 52a, Art. III *means* referendum petitions must be filed within 90 days from the beginning of a thirty day recess when the section itself says they must be filed within 90 days after final adjournment.

The question is vital here because the referendum petitions involved were filed in time if they could be filed within 90 days of final adjournment, whereas they are insufficient if they should have been filed 90 days after the beginning of a declared recess, to wit, on April 22. I think Sec. 29, [708] Art. III refers only to the effective date of bills passed thereunder and has no bearing on the time for filing of referendum petitions.

■ I further agree with the holding in the dissenting opinion of Hyde, J. that the words *law* and *laws* appearing in Sec. 29, Art. III, Const. 1945, do not refer to bills which have only been passed by the General Assembly and have not been signed by the Governor under Sec. 31, Art. III, or otherwise become laws under Sec's 32 or 33, Art. III. The provision in Sec. 30, Art. III that "no bill shall become a *law* until it is signed by the presiding officer of each house", does not mean that as soon as the bill is so signed it becomes a *law*. On the contrary it is still a bill, as clearly shown by the concluding sentence of Sec. 30, which provides that "when a *bill* has been signed" it must be presented to the Governor. Likewise, Sec. 31 provides that all *bills* shall be presented to the Governor. And Sec's 32 and 33 refer to bills presented to the Governor as "bills" and not as "laws". [Italics in quotations are mine].

In view of this Senate Bill 267 was not a "law" when the joint resolutions were passed by the Senate and House on January 21,

1952, accelerating the effective date of laws previously passed and not effective. It had not then been signed by the Governor, and was not signed until thereafter on March 5. It seems clear the proviso in Sec. 29, Art. III enabling the Assembly to accelerate the effective date of laws "previously passed and not effective" refers to bills which had previously been signed by the Governor under Sec. 31, Art. III, or had been passed over his veto under Sec. 32, or had become a law under Sec. 33 because of the Governor's failure to return the bill. In the specification in Sec. 29, Art. III referring to laws "previously passed and not effective", the word "effective" does not include bills passed by the Senate and House which had not been finally passed in one of the three ways specified. On the contrary it refers to laws which had not become effective in a temporal sense under the opening provision of Sec. 29—that is to say 90 days after the adjournment of the session.

*Leedy* and *Hyde, JJ.,* concur.

█ HYDE, J. (dissenting).—I respectfully dissent from the principal opinion and concur in the dissenting opinion of Ellison, C. J. It is my view that all bills passed at the same session of the Legislature have the same referendum deadline; and that petitions therefor may be filed at any time not more than ninety days after final adjournment. Sec. 52(a), Art. III, specifically so provides without any exception and there is nothing in Sec. 29 to the contrary. I do not see how any other result can be reached without amending the Constitution. The idea is not new that a law may be effective prior to the filing of referendum petitions, in which event its operation is suspended until its fate is determined in the referendum election. (See 28 Am. Jur. 178, Sec. 46, Annotation 7 A.L.R. 532; Lodge v. Ayers, Mont., 91 P. (2d) 691; Fitzpatrick v. State Board of Examiners, Mont., 70 P. (2d) 285.)

█ The proviso added to Sec. 29, Art. III of the 1945 Constitution (formerly Sec. 36, Art. IV, Const. of 1875) authorizes the General Assembly, if it recesses for thirty days or more, to "prescribe by joint resolution that *laws* previously passed and not effective shall take effect ninety days from the beginning of such recess." It seems to me that this clearly applies only to acts of the Legislature that have the status of laws at the beginning of the recess and not to bills that have not yet become laws at that time. Art. III, 1945 Constitution, as was true of Art. IV, 1875 Constitution, makes a clear distinction between laws and bills, in prescribing essential legislative proceedings. Sec. 21, Art. III (see Sec. 25, Art. IV, 1875 Const.) provides: "no law shall be passed except by bill," Sec. 27, Art. III (see Sec. 31, Art. IV, 1875 Const.) says: "Nor shall a bill be finally passed unless a vote by yeas and nays be taken and a majority of the members elected to each house be recorded

as voting favorably." Sec. 30, Art. III, (see Sec's. 37-38, Art. IV, 1875 Const.) says: "No bill shall become a law until it is signed by the presiding officer of each house in open session"; and "When [709] a bill has been signed, the secretary * * * shall present the bill in person to the Governor." Sec. 31, Art. III (see Sec. 38, Art. IV, 1875 Const.) provides: "*If the bill be approved by the Governor it shall become a law.*" Sec's. 32 and 33 (see Sec's. 39-40, Art. IV, 1875 Const.) provide how a bill may become a law if the Governor objects to it or fails to return it. These provisions, as to when a bill shall become a law, have been contained in all previous Constitutions. (See Sec. 10, Art. IV, Const. of 1820 and Sec. 9, Art. V, Const. of 1865.) These provisions show that a specific distinction was plainly made between "a bill" and "a law"; and that wherever one designation was made the other was not intended.

Furthermore, the language of the proviso itself shows that it is intended to apply only to bills that have become laws. It specifies "*laws previously passed and not effective.*" Only laws are ever effective, bills never are effective. The laws to which the proviso does not apply are those which *are effective* without waiting ninety days; namely, appropriation laws, and laws in which an emergency is expressed and have received a two-thirds vote, that have been signed by the Governor. Therefore, both what the proviso specifically excludes as well as what it includes are laws not bills. All other laws (which are not appropriation or emergency laws or laws put into effect on recess) do not take effect until ninety days after the adjournment of the session at which enacted. This has been the constitutional provision as to the effective date of laws since 1875 (Sec. 36, Art. IV, Const. 1875) except for the period of 1943 to 1945, when by an amendment to Sec. 36 (See Laws 1943, p. 1085) it was provided that laws should take effect "ninety days after enactment and approval thereof as otherwise provided by this Article." It seems to me that this language was also a recognition of the principle that both enactment by the Legislature and approval by the Governor was required, as provided in the other sections of Article IV of the 1875 Constitution, before a bill could become a law.

The only decision of this Court in which this matter has been considered is Nichols v. Robinson, 277 Mo. 483, 211 S. W. 11. The Constitution of 1865 was in effect when the bill involved in that case was passed. Under that Constitution, the Legislature could provide when its acts become effective; but a statute provided for them to "take effect at the end of ninety days unless a different time is therein appointed." (Sec. 4, p. 76, G. S. 1866.) The bill involved provided: "This act shall take effect and be in force from and after its passage." It was contended that this clause in the act was unconstitutional because it was intended to make it an effective law

without presentation to the Governor. The Court in overruling that contention and holding that the act "became an effective law" on the day the Governor signed it, said: "The legislative authority in Missouri is not wholly with the General Assembly. The Governor is a factor in legislation. When the General Assembly used the clause 'after its passage' as it did in Section 3 of the act, it meant after the signature and approval of the Governor, or in the event he vetoed it, the final passage over his veto, as provided in the Constitution." Thus, while bills are passed when "a majority of the members of each house be recorded as voting favorably" (Sec. 27, Art. III) but laws are not passed until signed by the Governor or finally passed without his approval.

Considering similar constitutional provisions, the Supreme Court of Montana said: "Clearly, the legislature cannot enact a law. It merely has the power to pass bills which may become laws when signed by the presiding officer of each house and are approved and signed by the Governor, or which he allows to become laws without his signature by lapse of time, in the manner prescribed by the Constitution. The presiding officer of each house and the Governor have under the Constitution, an indispensable part of the making of every law. They are part of the machinery set up by the Constitution to make laws." (Vaughn & Ragsdale Co. v. State Board of Equalization, 96 Pac. (2d) 420.) This is in accord with authority in this country generally as stated in 59 C.J. 575, Sec. 101, as follows: "Under the system of government adopted in this country the chief executive, [710] either the president or a governor, is a part of the law-making power, and while engaged in considering bills which have been passed by the legislature and which are presented to him for approval or disapproval, the governor is acting in a legislative capacity, or is exercising a power which is essentially legislative in character, and is not acting in an executive capacity." Thus the act of the Governor in approving a bill is the final act of legislative power which makes a bill passed by the Legislature become a law. That to me is the plain meaning of our constitutional provisions.

Since Senate Bill No. 267 had not been signed by the Governor prior to the beginning of the recess of January 22, 1952, it is not now effective and will not take effect until ninety days after the adjournment of the session at which it was enacted. This is an additional reason why, in any event, the referendum petitions involved were timely filed.

*Leedy, J.*, and *Ellison, C. J.*, concur.